FILED

STATE OF NORTH CAROLINA         IN THE GENERAL COURT OF JUSTICE
COUNTY OF PITT          2016 NOV 22 PM 4:51  SUPERIOR COURT DIVISION

PITT COUNTY, C.S.C.        - 16-CVS- 2712

---

RENE ROBINSON, individually, and as ADMINISTRATRIX of the ESTATE OF VELVET FOOTE

<div align="center">Plaintiffs,</div>

-vs-

GGNSC Holdings, LLC dba Golden Living Center, AKA Sava Senior Care, LLC dba McGregor Downs Health and Rehabilitation Center, Neil Kurtz

<div align="center">Defendants.</div>

---

Plaintiffs, first requesting trail by jury complaining of Defendants, say:

<div align="center">1.</div>

Velvet Foote, was born on 05/15/34.

<div align="center">2.</div>

Velvet Foote was a citizen of Halifax County, North Carolina.

Velvet Foote was a resident of Pitt County at the time of her death.

<div align="center">3.</div>

Rene Robinson is Velvet Foote's Daughter and prior to her death Velvet foote's primary care giver; she has been appoint to serve as the Administratrix of Velvet Foote's Estate, Velvet Foote having died on January 15, 2015.

<div align="center">4.</div>

Ms. Foote was admitted to defendant GGNSC Holdings, LLC dba Golden Living here in Greenville, North Carolina on November 13, 2014. She presented at the time of her admission as an advanced Alzheimer Patient with an unsteady gait and a propensity to eat most anything: toilet paper, coins, etc.

5.

GGNSC Holdings, LLC dba Golden Living was owned and operated by Golden Living, 5220 Tennyson Parkway, Suite 400, Plano, Texas during all times relevant hereto.

6.

Neil Kurtz is a citizen and resident of Plano, Texas. At all times relevant to this Complaint Defendant Neil Kurtz, M.D., was a physician but not duly licensed to practice his profession in the State of North Carolina; at all times relevant hereto he was CEO and President of GGNSC Holdings, LLC dba Golden Living.

7.

GGNSC Holdings, LLC is a Limited Liability Company registered to do business in the State of North Carolina. It's Service of Process Agent is _____

8.

GGNSC Holdings, LLC dba Golden Living provided care for and treatment of Velvet Foote with registered nursing staff (RNs) and Licensed Practical Nurses (LPNs). A medical Doctor was rarely to be seen.

9.

As recorded in her admit note: Velvet Foote was alert and responsive despite having the following diagnosis: Anxiety disorder, depressive disorder, atrial fibrillation, catatonic schizophrenia; she was on a soft diet with honey thickened liquids. She tolerated meds crushed. She was fed by staff by spoon and had a good appetite.

10.

For the first day, Ms. Foote went from alert and responsive to over medicated and snowed under, such that she was unresponsive to all interaction with staff. Despite the enduced condition, defendants' staff urged Plaintiff to sign away social security benefits even though Ms. Foote was only scheduled to be resident for a very brief time. Ms. Foote had presented with active Medicare benefits.

11.

The nursing notes, as sparse as they are, noted nothing significant between November 14 and November 17, when staff reported observing Ms. Foote eating butter off of dining tables, confirming her propensity to ingest any and everything she could lay her hands on.

12.

On the 18th Ms. Foote was observed watching a comedy on TV and responded readily to Terry Edwards in Recreation Services.

13.

On November 20, 2014, Staff's efforts at interaction were less than remarkable. Ms. Foote answered questions in the early interview by deflection but eventually answered appropriately as to her name. Throughout this time, Ms. Foote continued on a pureed diet with nectar fluid; she continued to eat well.

14.

Staff noted that Ms. Foote watched TV and engaged with things tactile, and that *she had a history of placing items in her mouth and that she had cognitive issues.*

15.

On the day of November 22, 2014, Ms. Foote did not eat breakfast, nor lunch. However, around diner an LPN entered ms. Foote's room with towels, a basin, and a bottle of body wash.

16.

Upon information and belief, to be borne out in discovery the LPN exited the room leaving behind a bottle of body wash before it had been used.

17.

At 18:41 on November 22 2014 LPN S. Gay recorded that help was summoned into Ms. Foote's room because she had been found with severe nausea, vomiting, and diarrhea.

18.

Defendants employed LPN and RN as the predominaate force on the floor routinely, and November 22, 2014 was no exception. At all times each was an agent, servant and/or employee of defendant, Golden Living, and at all times was acting within the course and scope of his or her agency, servanthood, and/or employment.

19.

GGNSC Holdings, LLC dba Golden Living through its agents, servants, employees and/or associates was negligent in that they:

    (a)    either failed to possess that degree of knowledge, training and experience ordinarily possesed by others practicing the specialty of geriatric medicine in communities similar to Pitt County, N.C. at all times in question; or

    (b)    failed to apply that degree of knowledge, training and experience to the care of Velvet Foote;

    (c)    failed to consider and act upon information related to them by Rene Robinson or Ms. Velvet Foote's medical record;

    (d)    failed to develop a proper plan of management for Velvet Foote;

    (e)    failed to properly and timely interpret the information related to them by Rene

Robinson or Velvet Foote;

(f) failed to timely disclose the cause for Ms. Foote's nausea, vomiting, and diarrhea.

(g) failed to order timely and appropriate diagnostic testing and work-up;

(i) failed to timely and appropriately interpret the results of those diagnostic studies performed;

(j) failed to order timely and appropriate consultations with medical specialists as was required by Ms. Velvet Foote's symptoms and clinical condition;

(k) failed to arrive at a timely and proper diagnosis consistent with Velvet Foote's signs, symptoms and clinical findings;

(l) prescribed and/or administered medication without first conducting thorough work-up of Velvet Foote's signs and symptoms;

(m) failed to safe guard Velvet Foote's environment or maintain a vigilant watch.

(n) permitted Velvet Foote to be examined and treated by an LPN without proper medical supervision;

(o) failed to provide proper medical supervision for LPNs who were agents, servants, employees and/or associates of defendant Golden Livingand

(p) failed to see, identify, and remove threats that were there to be seen;

(q) failed to place Ms. Velvet Foote in a proper scheme of care;

(r) failed to conduct timely and appropriate examinations of Velvet Foote;

(s) failed to timely and appropriately determine the need for surgery;

(t) failed to timely and appropriately refer for appropriate consultations;

(u)     failed to timely and appropriately diagnose and treat rectal bleeding;

(v)     failed to timely and appropriately clear Velvet Foote's environment of ingest-able

        objects or to refer her to a physician or facility properly equipped and staffed to

        render appropriaely medical care and treatment and;

(w)     failed to use their best judgment in the care and treatment of

        Velvet Foote;

(x)     failed to provide care in accordance with the standard of practice

        among members of the same health care profession with similar training and

        experience situated in same or similar communities in 2014.

(z)     was negligent in other respects which will be developed during

        discovery and proven at trial.

20.

By reason of the carelessness and negligence of the defendants, individually, jointly and

severally, by and through their officers, agents, and/or employees, Plaintiff, Rene Robinson, is

being deprived of the services, love and affection of her mother, Velvet Foote, and was obligated

to expend sums of money for her burial after negligent care and treatment.

21.

By reason of the foregoing, Rene Robinson, has been gravely damaged, the value to be

determined by the jury, in an amount in excess of the jurisdictional limits of all other courts that

may have jurisdiction over this action.

22.

Velvet Foote's injury, damage and untimely death include, but are not limited to: medical

expenses attributed to the care, treatment and burial of Velvet Foote, past and future pain and

suffering as a direct result of injuries inflicted to Rene Robinson's own back in caring for Velvet

Foote upon her mother's discharge and in a non-ambulatory state, pecuniary loss and emotional

damages.

23.

Although Plaintiffs object to the certification pursuant to Rule 9(j) of the North Carolina

Rules of Civil Procedure and without waiving this position, or conceding the applicability of

Rule 9(j) to this action, Plaintiffs allege that the medical care provided by the defendants has

been reviewed by one or more persons who are reasonably expected to qualify as medical expert

witnesses under Rule 702 of the Rules of Evidence and who are willing to testify that the medical

care did not comply with the applicable standard of care.

24.

WHEREFORE, Plaintiffs pray for relief as follows:

1.      That they have and recover judgment against the Defendants, jointly and

        severally, in a sum in excess of $10,000.00 for each cause of action sufficient to

        fully compensate them for the injuries and damages and harm caused by

        defendants;

2.      That all issues in this action be tried by a jury;

3.      That the costs of this action be taxed against defendants, jointly and severally,

        including prejudgment interest from the date this lawsuit was instituted, coupled

        with post-judgment interest;

4.      And for such other and further relief as to the Court may appear just and proper.

5.      Upon request by Defendants, or any one of them, Plaintiffs will specify in writing

        as provided by N.C.G.S.§1-a Rule 8(a) (2) the exact amount of monetary relief

requested.

This 22nd Day of November, 2016

*Frank Cassiano*

Frank A. Cassiano, Jr., Esq.
Law Offices of Frank Cassiano
PO Box 7383
Greenville, North Carolina 27835
(919) 7375-1009
State Bar No.: 15798

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE

COUNTY OF PITT     jAO APD '10 p:4 t· 110 SUPERIOR COURT DIVISION

                                     16-CVS-2712

PITT COUNTY, C.S.C.

| | |
|---|---|
| RENE ROBINSON, individuh11y-; - - - - -·--)-- <br> and as ADMINISTRATRIX of the     ) <br> ESTATE OF VELVET FOOTE,      ) <br>             Plaintiffs       ) <br>                          ) <br>     -vs-                      ) <br>                          ) <br><br> GGNSC HOLDINGS, LLC D/B/A      ) <br> GOLDEN LIVING CENTER, A/K/A SAVA) <br> SENIOR CARE, LLC D/B/A MCGREGOR) <br> DOWNS HEALTH AND          ) <br> R HABILITATION CENTER, AND NEIL) <br> KURTZ,                        ) <br>             Defendants.      ) | Affidavit of Service by Frank Cassiano, <br> Including Statement Pertaining to Dr. <br> Edward Mallory's Review of the Medical <br> Records |

NOW COMES Frank Cassiano to Offer the following based upon personal knowledge of facts relevant to the case that was at bar.

1.   I was first licensed as an attorney in 1988.

2.   Plaintiffs Rene Robinson, individually, and as Administratrix of the Estate for her mother, Velvet Foote, called on me in the late summer of 2016 to evaluate the merits of the case before this court.

3.   The factual details came in combination with facts indicating negligent treatment that followed at an earlier facility, one out of this county, but the facts were substantiated by photographs, and medical records presented at that time.

4.   Plaintiff Rene Robinson provided me with medical records, photographs, and correspondence written by one or more defendant and advised me that she had forwarded

the same to an attorney in Raleigh, as well as to Dr. Edward Mallory in Florida.

5.  I did not have the fortune of knowing Plaintiff before any of these incidents unfolded, but I am here to tell this Court that I have a tremendous amount of respect for her veracity, resourcefulness, and diligence.

6.  In November 2016, Rene Robinson called to alert me that Dr. Edward Mallory would be calling, and, indeed he did call me, however I do not recall the date specifically.

7.  During that afternoon telephone call he discussed the care that was documented in the medical records that he had received. I posed several questions for him to comment on that centered on my understanding of nuances contained in the medical records. He offered concise insights on the merit and propriety of each scenario I proposed relative to the care and or lack of care Ms. Foote experienced. Dr. Mallory was well versed with the specifics contained in Ms. Foote's medical records.

8.  I am of the opinion that the good Doctor could not have had such insights into Ms. Foote's medical care if he had not reviewed medical records covering the period of time in question.

9.  Dr. Mallory was not present during any phase of Ms. Foote's medical care, including her time in any nursing home setting.

10. Following the commentary Dr. Mallory shared with me, I drafted the complaint that started the dismissed case. In doing so, I copied and pasted a paragraph I used previously in numerous wrongful death medical malpractice cases: The Estate of Karen Langston vs. Johnston Memorial Hospital Foundation dba Johnston Memorial Hospital et. al.; Estate of Jessica Santian vs. Duke University Medical Center, et. al. No defense firm ever complained about the sufficiency of the 9(j) certification language.

STATE OF NORTH CAROLINA

COUNTY OF PITT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 16-CVS-2712

RENE ROBINSON, individually, and as ADMINISTRATRIX of the ESTATE OF VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC dba GOLDEN LIVING CENTER, AKA, SAVA SENIOR CARE, LLC, dba MCGREGOR DOWNS HEALTH and REHABILITATION CENTER

Defendants

AMENDED COMPLAINT

Plaintiffs, amends their complaint as a matter or course under G.S. 1A-1, Rule 15.a. of the N.C. Rules of Civil Procedure, first requesting trial by jury, complaining of Defendants, GGNSC HOLDINGS, LLC dba GOLDEN LIVING CENTER, AKA, SAVA SENIOR CARE, LLC, dba MCGREGOR DOWNS HEALTH and REHABILITATION CENTER, hereinafter Defendants, say:

## I.
## PARTIES AND JURISDICTION

1. Rene Robinson is a citizen and resident of Halifax County and has been so for more than six months next preceding the filing of this complaint.

2. Velvet Foote, was born on May 15, 1934, much loved and respected, was the mother and responsibility of Plaintiff Rene Robinson and at the time of her death, January 15, 2015, was a resident and citizen of Halifax County, North Carolina.

3. Rene Robinson is Velvet Foote's Daughter and prior to Velvet Foote's death, held a durable power of attorney, was primary caregiver, and was appointed to serve as the Administratrix of Velvet Foote's Estate.

4. GGNSC Holdings, LLC dba Golden Living was owned and operated by Golden Living, 5220 Tennyson Parkway, Suite 400, Plano, Texas during all times relevant hereto.

5. Neil Kurtz is a citizen and resident of Plano, Texas. At all times relevant to this Complaint Defendant Neil Kurtz, M.D., was a physician but not duly licensed to practice his profession in the State of North Carolina; at all times relevant hereto he was CEO and President of GGNSC Holdings, LLC dba Golden Living.

6. GGNSC Holdings, LLC is a Limited Liability Company, upon information and belief, is registered to do business and is doing business in the State of North Carolina and is operating Golden Living Center, 2910 McGregor Downs Road, Greenville, North Carolina 27834.

7. Defendants are liable based upon the doctrine of respondent superior and had supervision, control, management of the work of the agents, employees, and representatives who were negligent as described in the complaint and such negligent acts and omissions were committed while performing within the scope of their employment and are imputed to Defendants;

8. The injuries complained of resulted from the negligence and gross negligence of the management, agents, employees, and representatives of Defendants while Ms.

2

Foote was admitted as a patient for seven days of physical therapy at Defendants' Greenville, North Carolina facility between about 14-20 November 2014.

## II.
## FACTUAL ALLEGATIONS

9. Ms. Foote was admitted to Defendant facility Golden Living, Greenville, North Carolina on about November 13, 2014; and presented at the time of her admission as an advanced Alzheimer Patient, of which Defendants were fully aware, with an unsteady gait and a propensity to eat most anything: toilet paper, coins, etc.

10. GGNSC Holdings, LLC dba Golden Living advertised to public as being particularly suited to provide care for and treatment of patients like Velvet Foote with registered nursing staff (RNs) and Licensed Practical Nurses (LPNs).

11. As recorded in her admit note: Velvet Foote was alert and responsive despite having the following diagnosis: Anxiety disorder, depressive disorder, atrial fibrillation, catatonic schizophrenia; she was on a soft diet with honey thickened liquids. She tolerated meds crushed. She was fed by staff by spoon and had a good appetite.

12. The nursing notes, as sparse as they are, noted nothing significant or remarkable between November 14 and November 17, when staff reported observing Ms. Foote eating well including butter off dining tables, confirming her propensity to ingest any and everything she could lay her hands on.

3

13. On the day of November 18 2014, Ms. Foote was observed watching a comedy on TV and responded readily to Terry Edwards in Recreation Services.

14. On November 19, 2014, Staffs efforts at interaction were less than remarkable. Ms. Foote answered questions in the early interview by deflection but eventually answered appropriately as to her name. Throughout this time, Ms. Foote continued a pureed diet with nectar fluid; she continued to eat well.

15. Staff noted that Ms. Foote watched TV and engaged with things tactile, and that she had a history of placing items in her mouth and that she had cognitive issues.

16. On the day of November 20, 2014, Nursing Notes, without further explanation, stated that Ms. Foote did not eat breakfast, nor lunch; and around dinner time an LPN entered Ms. Foote's room with towels, a basin, and a bottle of body wash.

17. Upon information and belief, to be borne out in discovery the LPN exited the room leaving behind a bottle of body wash before it had been used.

18. At 18:41 on November 20, 2014 LPN S. Gay recorded that help was summoned into Ms. Foote's room because she had been found with severe nausea, vomiting, and diarrhea; and the body wash bottle, left in the room full and unused by the nurse earlier, was found empty.

19. Defendants employed LPN and RN as the predominate force on the floor routinely, and November 20, 2014 was no exception. At all times each was an agent, servant and/or employee of Defendants, and at all times was acting within the course and scope of his or her agency, servanthood, and/or employment.

4

20. As a result of Ms. Foote's worsening condition, EMS was called and at the time of their arrival, she had stopped breathing and was revived and transported to Vidant Hospital's Intensive Care Unit where she was diagnosed with vomit in her lungs for which she was treated and was in the hospital from 20 thru 29 November 2014.

21. The vomit in the lungs of Ms. Foote was said by the physician to have resulted in the condition of "Sepsis Aspiration Pneumonia," which is indicated on her death certificate as being the cause of her death on January 15, 2015.

### III
### FIRST CLAIM FOR RELIEF
### NEGLIGENT PERSONAL INJURY

22. Plaintiff repeats and adopts herein the allegations made in the foregoing paragraphs as if set forth herein.

23. Defendants by through its agents, servants, employees and/or associates, in proximately causing the herein described injury, were negligent in that they:

    (a)    either failed to have sufficient staff or staff failed to possess that degree of knowledge, training and experience ordinarily possessed by others practicing the specialty of geriatric medicine in communities similar to Pitt County, N.C. at all times in question; or

    (b)    failed to apply that degree of knowledge, training and experience to the care of Velvet Foote;

    (c)    failed to consider and act upon information related to them by Rene Robinson or Ms. Velvet Foote's medical record;

5

(d)  failed to develop a proper plan of management for Velvet Foote;

(e)  failed to properly and timely interpret the information related to them by Rene Robinson or Velvet Foote;

(f)  failed to timely discover and disclose the cause of Ms. Foote's nausea, vomiting, and diarrhea,

(g)  failed to order timely and appropriate diagnostic testing and work-up;

(h)  failed to timely and appropriately interpret the results of those diagnostic studies performed;

(i)  failed to order timely and appropriate consultations with medical specialists as was required by Ms. Velvet Foote's symptoms and clinical condition;

(j)  failed to arrive at a timely and proper diagnosis consistent with Velvet Foote's signs, symptoms and clinical findings;

(k)  prescribed and/or administered medication without first conducting thorough work-up of Velvet Foote's signs and symptoms;

(l)  failed to safe guard Velvet Foote's environment or maintain a vigilant watch.

(m)  permitted Velvet Foote to be examined and treated by an LPN without proper medical supervision;

(n)  failed to provide proper medical supervision for LPNs

6

who were agents, servants, employees and/or associates of
defendant Golden Living

(o) failed to see, identify, and remove threats that were there to be seen;

(p) failed to place Ms. Velvet Foote in a proper scheme of care;

(q) failed to conduct timely and appropriate examinations of Velvet Foote;

(r) failed to timely and appropriately determine the need for surgery;

(s) failed to timely and appropriately refer for appropriate consultations;

(t) failed to timely and appropriately diagnose and treat rectal bleeding;

(u) failed to timely and appropriately clear Velvet Foote's environment of
ingest-able objects or to refer her to a physician or facility properly
equipped and staffed to render appropriate medical care and treatment;

(v) failed to use their best judgment in the care and treatment of Velvet
Foote;

(w) failed to provide care in accordance with the standard of practice
among members of the same health care profession with similar
training and experience situated in same or similar communities in
2014 and;

(x) was negligent in other respects which will be developed during discovery
and proven at trial.

24. Defendants knew or reasonably should have known that the negligence
complained of herein would likely cause the injuries of the type described herein.

25. As a consequence of the condition caused by the negligence and gross negligence
of Defendants, their management, employees, agents, representatives and assigns,

Ms. Foote could not stand, sit, or move from wheelchair to regular chair and suffered great stress, frustration, pain, and suffering before her death.

26. The negligent and grossly negligent acts and omissions of Defendants, their management, employees, agents, representatives and assigns are the proximate cause of the injury to Velvet Foote, characterized as Septic Aspiration Pneumonia which was the cause of her death.

27. Plaintiffs acted reasonably and were not negligent in any manner that contributed to the injuries described in this complaint.

## IV
## SECOND CLAIM FOR RELIEF
## PERSONAL INJURY AND NEGLIGENT SUBSTANTIAL EMOTIONAL DISTRESS OF RENE ROBINSON.

28. Plaintiff repeats and adopts herein the allegations made in the foregoing paragraphs as if set forth herein.

29. Negligent Physical Injury to Plaintiff Rene Robinson.

    a. Prior to admission to Defendants' facility, Ms. Foote was very helpful to Plaintiff Rene Robinson, hereafter, Plaintiff, who was her care giver, by standing, walking, sitting, getting in and out of bed as directed, and had been managed by Plaintiff for more than a year.

    b. Immediately before returning home from Vidant Hospital after the emergency admission from Defendant's facility, Plaintiff learned that a hospital bed would be required for her mother and obtained one as it was reasonable for her to do.

    c. After Ms. Foote was delivered to their home by the ambulance, Plaintiff

was trained by the ambulance attendant regarding the lifting and moving of her mother to avoid injury because Ms. Foote was in no condition to be helpful in her mobility in any manner.

d. Plaintiff worked diligently to obtain professional assistance for her mother who was prescribed 24-7 assistance by her physician but was unable to find the needed nursing assistance and had to manage her mother herself.

e. In managing her mother, Plaintiff was severely injured such that she cannot stand up straight and is in constant pain; and surgery and long-term convalescence are required for her recovery.

f. Defendants knew or reasonably should have known that the negligence complained of herein would likely cause the injuries of the type described herein.

g. Defendant's negligence as described herein is the proximate cause of Plaintiff's injury.

h. Plaintiff acted reasonably, was not negligent, and did not contribute to her injury.

30. Negligent Substantial Emotional Distress to Plaintiff Rene Robinson.

a. Plaintiff, an honorably discharged veteran, suffering from PTSD from physical and emotional injury while on active duty, was particularly vulnerable to substantial emotional distress.

b. As a consequence of a disease contracted while on active duty, Plaintiff experiences a condition that resurfaces requiring medication when confronted with substantial emotional distress.

9

c. As a direct and proximate cause of the experience of seeing and having to manage Ms. Foote as a consequence of the injury experienced by the negligence and gross negligence of Defendants, Plaintiff experienced substantial emotional distress resulting in the condition associated with substantial emotional distress.

d. As the proximate cause of the carelessness and negligence of the defendants, individually, jointly and severally, by and through their officers, agents, and/or employees, Plaintiff, Rene Robinson, is continuing to experience emotional distress and is being deprived of the services, love and affection of her mother, Velvet Foote, and was obligated to expend sums of money for her burial after negligent care and treatment.

e. Defendants knew or reasonably should have known that the negligence complained of herein would likely cause the injuries of the type described herein.

f. By reason of the foregoing, proximately caused by Defendants, Rene Robinson, has been gravely injured, the value to be determined by the jury, in an amount in excess of the jurisdictional limits of all other courts that may have jurisdiction over this action.

31. Plaintiff is further injured by the injury, damage and untimely death of Velvet Foote and include, but are not limited to; medical expenses attributed to the care, treatment and burial of Velvet Foote, past and future pain and suffering as a direct result of injuries inflicted to Rene Robinson's own back and body in caring for and

managing Velvet Foote After her discharge and in a non-ambulatory state, pecuniary loss and emotional damages.

**V.**
**THIRD CLAIM FOR RELIEF**
**A CLAIM FOR PUNITIVE DAMAGES.**

32. Plaintiff repeats and adopts herein the allegations made in the foregoing paragraphs as if set forth herein.

33. With wanton and reckless disregard for the likely consequence of admitting Ms. Foote, knowing well the extreme understaffing of the facility, Defendants admitted Ms. Foote.

34. As the proximate, direct, probable and likely consequence of the known and dangerous understaffing of the facility with qualified nursing and attending staff, Ms. Foote went all day on about 20 November 2014 without food and the attention required to keep her safe from ingestible liquids and other harmful substances.

35. As the proximate, direct, probable and likely consequence of the known and dangerous understaffing of the facility with qualified nursing and attending staff, and the attention required to keep her safe from ingestible liquids and other harmful substances, upon information and belief, Ms. Foote ingested the liquid that resulted in her diagnosis of Septic Aspiration Pneumonia, which was the cause of her death.

36. Defendants knew or reasonably should have known that the negligence complained of herein would likely cause the injuries of the type described herein.

37. The conduct of Defendants, through their management, agents, employees, representatives, and assigns were grossly negligent and acted with reckless and wanton disregard causing the injury experienced by Ms. Foote and Plaintiff Rene Robinson.

WHEREFORE, Plaintiffs pray for relief as follows:

1. That they have and recover judgment against the Defendants, jointly and severally, in a sum in excess of $10,000.00 for each cause of action sufficient to fully compensate them for the injuries and damages and harm caused by Defendants;

2. That they have and recover judgment against the Defendants, jointly and severally, Punitive Damages in a sum in excess of $10,000.00 for each cause of action to sufficiently punish Defendants for their wanton and grossly negligent misconduct;

3. That all issues in this action be tried by jury;

4. That the costs of this action be taxed against Defendants, jointly and severally, including prejudgment interest from the date this lawsuit was instituted, coupled with post-judgment interest;

5. And for such other and further relief as to the Court may appear just and proper.

6. Upon request by Defendants, or any one of them, Plaintiffs will specify in writing as provided by N.C.G.S. § 1-A Rule 8(a)(2) the exact amount of monetary relief requested.

This the _4th_ day of June 2017.

Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiffs

## PLAINTIFF'S VERIFICATION

Plaintiff, Rene Robinson does depose and say that she is the Plaintiff in this action and that she has read the foregoing Amended Complaint and knows its contents and that the same is true of her own knowledge except as to those matters stated on information and belief, and as to those matters, she believes them to be true.

_____
RENE ROBINSON

NORTH CAROLINA
COUNTY OF HALIFAX

NOTARY PUBLIC:

Sworn and subscribed to before me this

7th day of June 2017

_____ (Official Seal)

Notary Public

My commission expires: 12-28-2017

Richard E. Batts
NOTARY PUBLIC
Edgecombe County, NC
My Commission Expires December 28, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the forgoing AMENDED COMPLAINT by personal delivery, by Facsimile, 336.907.4178, and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail at Rocky Mount, North Carolina, addressed to the following person at the following address which is the last address know to me:

> Brian H. Alligood
> BOVIS KYLE BURCH & MEDLIN
> 300 Green Valley Rd., Suite 102
> Greensboro, North Carolina 27408
> Telephone: 336.907.3265
> Facsimile: 336.907.4178
> BAlligood@boviskyle.com
> Attorneys for Defendants

This the _6th_ day of June 2017.

BY: _____

Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiffs

14

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

**DEFENDANT NEIL KURTZ's MOTION
AND ORDER FOR EXTENSION OF TIME
TO ANSWER PLAINTIFFS' COMPLAINT**

Pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, and subject to and without waiving his personal jurisdiction defense, defendant Neil Kurtz hereby moves for an extension of time within which to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint to and including March 4, 2017, and in support thereof state that this request for extension is made before the expiration of the period originally prescribed, and this defendant reasonably requires such additional time in order to adequately and fully prepare his response. Defendant Neil Kurtz was served on or about January 3, 2017 by U.S. mail.

WHEREFORE, this defendant prays that the Court extend the time to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint to and including March 4, 2017, and that the Court grant such other and further relief which the Court deems just and proper.

This the 19 day of January, 2017.

Brian H. Alligood
Attorney for Defendants

OF COUNSEL:
SHARPLESS & STAVOLA, P.A.
Post Office Box 22106
Greensboro, North Carolina 27420
Telephone: (336) 333-6400

## ORDER [16 CvS 2712]

Upon application of the defendant Neil Kurtz and for good cause shown, this defendant is granted to and including March 4, 2017, within which to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint.

This the _____ day of _____, 2017.

_____
Assistant Clerk of Superior
Court of Pitt County

2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT NEIL KURTZ's MOTION AND ORDER FOR EXTENSION OF TIME TO ANSWER PLAINTIFFS' COMPLAINT** was served upon the parties to this action by mailing a copy thereof by first-class, postage pre-paid mail to the following counsel of record:

> Mr. Frank A. Cassiano, Jr.
> P O Box 7383
> Greenville, NC 27835
> *Attorney for Plaintiffs*

This the ___19th___ day of January, 2017.

Brian H. Alligood
Attorney for Defendants

OF COUNSEL:

SHARPLESS & STAVOLA, P.A.
Post Office Box 22106
Greensboro, North Carolina 27420
Telephone: (336) 333-6400

3

STATE OF NORTH CAROLINA

PITT COUNTY

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

           Plaintiffs,

    v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

           Defendants.

**DEFENDANT GGNSC HOLDINGS, LLC's
MOTION AND ORDER FOR EXTENSION
OF TIME TO ANSWER PLAINTIFFS'
COMPLAINT**

---

    Pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, the defendant GGNSC Holdings, LLC hereby moves for an extension of time within which to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint to and including March 7, 2017, and in support thereof state that this request for extension is made before the expiration of the period originally prescribed, and this defendant reasonably requires such additional time in order to adequately and fully prepare its response. Defendant GGNSC Holdings, LLC was served on January 6, 2017 via personal service by the plaintiffs' attorney.

    WHEREFORE, this defendant prays that the Court extend the time to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint to and including March 7, 2017, and that the Court grant such other and further relief which the Court deems just and proper.

    This the _19th_ day of January, 2017.

                                Brian H. Alligood
                                Attorney for Defendants

OF COUNSEL:
SHARPLESS & STAVOLA, P.A.
Post Office Box 22106
Greensboro, North Carolina 27420
Telephone: (336) 333-6400

## ORDER [16 CvS 2712]

Upon application of the defendant GGNSC Holdings, LLC and for good cause shown, this defendant is granted to and including March 7, 2017, within which to prepare and serve an Answer or otherwise respond to the plaintiffs' complaint.

This the _____ day of _____, 2017.

_____
Assistant Clerk of Superior
Court of Pitt County

2

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT GGNSC HOLDINGS, LLC's MOTION AND ORDER FOR EXTENSION OF TIME TO ANSWER PLAINTIFFS' COMPLAINT** was served upon the parties to this action by mailing a copy thereof by first-class, postage pre-paid mail to the following counsel of record:

> Mr. Frank A. Cassiano, Jr.
> P O Box 7383
> Greenville, NC 27835
> *Attorney for Plaintiffs*

This the 11th day of January, 2017.

Brian H. Alligood
Attorney for Defendants

OF COUNSEL:

SHARPLESS & STAVOLA, P.A.
Post Office Box 22106
Greensboro, North Carolina 27420
Telephone: (336) 333-6400

3

FILED

2017 APR -6 PM 4:23

PITT COUNTY, C.S.C.

BY _____

**STATE OF NORTH CAROLINA**
**County Of PITT**

FILE NO: 16-CVS-2712
FILM NO:
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

RENE ROBINSON, Individually )
and as ADMINISTRATRIX of the )
ESTATE OF VELVET LEE FOOTE )
 )
Plaintiff(s) )
 )
Vs. )
 )
GGNSC HOLDINGS, LLC d/b/a )
Golden Living Center, a/k/a Sava )
Senior Care, LLC d/b/a McGregor )
Downs Health and Rehabilitation )
Center and Neil Kurtz. )
 )
Defendant(s) )

**MOTION FOR ENTRY OF**
**DEFAULT JUDGEMENT**

Plaintiff(s) RENE ROBINSON, Individually and as ADMINISTRATRIX of the ESTATE OF VELVET LEE FOOTE request that Entry of Judgement by Default be entered against Defendant Neil Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center, PURSUANT to North Carolina State Rules of Civil Procedure 55(a). In support of this request Plaintiff(s) RENE ROBINSON, Individually and as ADMINISTRATRIX of the ESTATE OF VELVET LEE relies upon the record in this case and the Affidavit submitted herewith.

Plaintiffs filed for Entry of Default on March 27, 2017 and the Clerk of the Court researched the appropriateness of the Timing and the Motion, ultimately signing the Order for Entry of Default. On January 19, 2017 counsel for Defendant Neil Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center, requested an extension of time to answer, which was summarily granted specifying that Defendant Neil Kurtz was to Answer by March 4, 2017 and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center was to Answer by March 7, 2017. Neither Defendants Answered within the extension time prescribed by this Court.

Counsel for Defendant Neil Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center, filed Motions to Dismiss without Answering on Thursday, March 9, 2017, after the time allowed for such had run.

This, the _6th_ day of April, 2017

Rene Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, North Carolina 27870
**(252) 529-3911**

FILED

STATE OF NORTH CAROLINA          FILE NO: 16-CVS-2712    2017 FEB -6  PM 4: 74
County Of PITT                   FILM NO:                  PITT COUNTY, C.S.C.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

RENE ROBINSON, individually          )
and as ADMINISTRATRIX of the         )
ESTATE OF VELVET LEE FOOTE           )
                                     )
        Plaintiff(s)                 )
                                     )
        Vs.                          )      **AFFIFAVIT IN SUPPORT Of**
                                     )      **MOTION FOR ENTRY OF DEFAULT**
                                     )      **JUDGEMENT**
GGNSC HOLDINGS, LLC d/b/a            )
Golden Living Center, a/k/a Sava     )
Senior Care, LLC d/b/a McGregor      )
Downs Health and Rehabilitation      )
Center and Neil Kurtz,               )
        Defendant(s)                 )

---

I, Rene' Robinson, being Duly sworn, State as Follows:

1. I am a Plaintiff and the Administratrix of the Estate of Velvet Lee Foote in the above-entitled action and I am familiar with the file, records and pleadings in this matter.

2. The Summons and Complaint were served upon **Defendant Neil Kurtz**; via **Certified Return RECIEPT in the US MAIL on JANUARY 3,2017** and **Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center** by personal service upon Director Hall Garland on **JANUARY 6, 2017.**

3. **Answers to the Complaint were due by Neil Kurtz on MARCH 4, 2017 and GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center on MARCH 7, 2017.** No response was served within the time allowed by law. Counsel, for Defendants requested an extension of time on January 19,2017 and the dates were summarily granted, specifying March 4, 2017 for Defendant Neil Kurtz and March 7, 2017 for Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center. Neither Defendant ANSWERED within the extension time prescribed by this Court. Counsel for Defendants filed Motions to Dismiss, without answering, on March 9, 2017. This was after the time allowed for such had run and no answer had been filed or served. Plaintiffs filed a Motion for Entry of Default on March 27, 2017 and the Clerk of Court researched the appropriateness of the Time and the Motion, ultimately signing the Order.

4. The Default of Defendants was Entered on March 29, 2017.

As required by the Servicemembers Civil Relief Act of 2003, I have confirmed that the Defendants are not currently on active military service. To the best of my information and belief, Defendants are not infants, incompetent nor under disability, that default has been entered against Defendant Niel Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and that Defendant Niel Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center are liable for damages as demanded.

The Plaintiffs claim is for:

1. My Mother, Velvet Lee Foote, transferred from Vidant Medical Trauma Center to Golden Living Center for physical therapy, due to unsteady gait on November 13, 2014. Golden Living Center accepted admission, despite Diagnosis of Alzheimer's and Schizophrenia; both diagnoses required close supervision or observation. Defendant's staff stated that they were capable of providing appropriate care for patients with these mental diagnoses.

2. On November 14, 2014, I, Rene Robinson, visited my mother and taking new clothes to Defendant Golden Living Center. I introduced myself to the covering nurse and physical Therapist and explained my mother's medical and mental condition to all departments of the facility. I Provided Golden Living Center personal information that my mother had a propensity to eat most anything; toilet paper, coins and staff noted that in the patient records.

3. I, Rene' Robinson, visited my mother every other day at the Golden Living Center, since her Admission date of November 14, 2014; due to the distance of 86.2 miles and travel time 1 hour and 26 minutes from residence to Golden Living Center.

4. During Visitations with my mother, there were no complaints addressed to me by any members of the Nursing Department, Physical Therapy Department, and/or Administration Department regarding my Mothers Eating habits, Social Adaptation with facility employees and/or Patients.

5. November 17, 2014 Nurses notes recorded staff observing Mrs. Foote eating butter off dining tables confirming her propensity to ingest anything and everything she could lay her hands on.

6. November 21, 2014, I, Rene Robinson, visited my mother and brought her a honey bun.

7. Therapist and Intern Therapist (ECU Student) were present during this visit. Mother ask for a piece of the honey bun. Upon approval by the physical therapist and under her direction, I gave small pieces of the honey bun and Cole slaw to my mother. The Therapist, listening with a stethoscope, reported that my mother swallowed without incident. During this visitation, my mother stated to the physical therapist that If I do not take her home, that she (Physical Therapist) will; we all laughed and I told my mother she would be coming home in two days. At the conclusion of this visit, I was approached by a Finance representative for Defendant Golden Living Center, who urged me to sign various paper work, purportedly pertaining to various insurances. Upon reviewing the various document's, I discovered that I was being asked to

surrender my mother's Social Security Benefits. I left the facility with all the paper work. I left nothing behind.

8. November 22, 2014, around 7:00 P.M., I received a phone call from a nurse at the facility. The Caller stated that my mother had been transported to Vidant Medical Trauma Center's Emergency Room, due to severe vomiting and diarrhea. I immediately proceeded to Vidant Emergency Room, arriving around 9:30 P. M.. I met with ER physicians; I saw my mother. I asked the covering ER Physician what had caused my mother to have the ongoing symptoms. I never received an answer. I then asked the ER Physician to perform a blood test to check anything within her bloodstream. The ER Physician responded that they could not do that type of blood test in this hospital. My Mother was admitted to ICU.

9. November 23, 2014, I met with the attending physician for my mother. Again, I asked this physician about the blood test. He stated that the test could have been performed, but that it was now too late, because antibiotics had been administered.

10. On November 24, 2014, I returned to Defendant Golden Living Center to speak with the Director/Administrator, after having set the meeting up the day before by telephone. Notwithstanding I was advised by the Finance Manager that the Director was not on the premises and had taken the day off. The Nursing Director then asked that we meet in private, but an additional nurse sat in on this meeting. The Nursing Director repeatedly stated that she was sorry for what had happened and that they were severely understaffed. When I asked, what happened, I never received an answer. After the meeting, I went to my mother's former room to retrieve her personal belongings. Upon entry, I was struck by the fact that nothing had been changed. Looking around the room it explained what had happened on November 22, 2014. Supported and substantiated by pictures and audio recordings.

11. As a result of this incident, my mother went from being a vibrant, self-supportive great-grandmother to a bed ridden medically dependant patient requiring around the clock, constant care.

12. Grandchild, Alisya Bradley, pregnant, due to deliver in April 2015, visited her grandmother in Vidant Medical Center. During a bathroom break during that visit, Alisya Bradley began to spot. A Nurse was called and she emergently transported Alisya Bradley by wheel chair to the Vidant OBGYN Emergency Room for immediate treatment. The treating physician opined that Alisya Bradley's spotting was brought on by the stress of seeing her grandmother in this condition. Substantiated by video.

13. I am the sole Biological Child of Velvet Lee Foote; my mother had two Grandchildren and 6 Great-Grandchildren. A seventh great grandchild was born on April 13, 2015; my mother never got to hold, caress, touch and/or even physically see her seventh great grandchild. (see attached Video).

14. Upon my mother's discharge from Vidant Medical Trauma Center, she was completely Bed ridden and had a Stage One Bed Sore on her Coccyx bone near her lower back; she arrived home by medical transport.

In terms of articulating a value for the lost Velvet Foote's family has sustained, I offer the following:

- **Compensatory:**

- **LOST OF COMPANIONSHIP** (Only Child, two Grandchildren, Six Great Grand Children, a seventh great grandchild born on April 13, 2015)

- **PAIN AND SUFFERING** (Only Child, two Grandchildren, Six Great Grand Children, a seventh great grandchild born on April 13, 2015)

- **GUIDANCE** (My mother taught me and her grandchildren, how to cook, clean, wash clothes, drive, socialized with people beyond our family, study and dream.

- **COMFORT**

- **FINANCIAL ASSISTANCE** (Mom Paid RENT, ELECTRIC, WATER, CABLE AND TRASH BILLS)

- **SECURITY** (Mom had very good hearing and was always aware of who was around and what was going on around our home).

- **PROTECTION**

- **PECUNIARY VALUE OF LIFE** (Age Scale, 80 years of Age female: $528,100.00.)

- **COST OF FUNERAL AND BURIAL EXPENSES.**

- **PERSONAL INJURY:** Plaintiff, II, Rene' Robinson, sustained a lower back and right hip injury caring for my mother at home from November 2014 until her death on January 15, 2015. These injuries require spinal surgery and a hip replacement per physician's diagnosis from Duke Neurosurgery and Orthopedic Centers.

- **MEDICAL EXPENSES PAID.** (My mother's past and my current and future medical expenses).

- **REPLACEMENT OF CLOTHES** brought from Greenville Walmart for her stay at Golden Living Center for physical therapy. Substantiated by audio recording

- **Punitive Damages:** Golden Living Center was not equipped to care for anyone presenting with a diagnosis of Alzheimer's and/ or Schizophrenia; Golden Living Center did not have Technical and/or Human monitorization (surveillance) for residents with deteriorating mental conditions; Golden Living Center did not have appropriate measures for locking down unmonitored, dangerous areas. The Willful, Wonton and Malicious actions of Staff in failing to monitor Velvet Foote after noting changes in her appetite in the nurse's notes on November 22, 2014 lead to her death from Asphyxiated pneumonia and Sepsis (Substantiated by the Death Certificate, nurse's notes, pictures and audio recordings).

Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center are a chameleon created by multibillionaire's, one of whom is Neil Kurtz. They present themselves as board members and take turns as owner's. Defendant Neil Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center sole purpose is financial gain. Defendant Neil Kurtz and Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center have shown consistent malice in managerial aspects of this company and the hires that render services. (Substantiated by attached evidence pursuant to the North Carolina Rules of Civil Procedure 703RJ).

As a result of Malice, Gross and Wonton Conduct, Pain and Suffering, a Punitive damages award is appropriate. I am providing a table of calculations regarding the monetary relief sought based on the US Federal Reserve Average Net Worth by Age for All Americans (Exhibit I).

## CALCULATION OF DAMAGES

$528,100 (Age at Death 80) x 10 (1 Child; 2 Grandchildren; 7 Great-Grandchildren) x 4 (Punitive Damages = $21,124,000.00 (Total Damages) Pursuant to G.S. 90-21.19(b) , according to this fair and unbias calculation; asking for 20 Million is not off at all.

Rene' Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, NC 27870
(252) 529-3911

Sworn to and subscribed before

Me this 6 day of April , 2017.

NOTARY PUBLIC

MY COMMISSION EXPIRES: 09/03/2017

# THE AVERAGE NET WORTH BY AGE FOR ALL AMERICANS

(EXHIBIT I)

To calculate the average net worth for the upper middle class, let's first look at the average net worth of all Americans. This data comes from the US Federal Reserve.



Average net worth for all Americans.

Source: US Federal Reserve

FILED

2017 APR -6  PM 4:23

PITT COUNTY, C.S.C.

**STATE OF NORTH CAROLINA**
**County Of PITT**

FILE NO: <u>16-CVS-2712</u>
FILM NO:
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

RENE ROBINSON, individually            )
and as ADMINISTRATRIX of the           )
ESTATE OF VELVET LEE FOOTE             )
                                        )
        Plaintiff(s)                    )
                                        )
    Vs.                                 )          **CALENDAR REQUEST**
                                        )
GGNSC HOLDINGS, LLC d/b/a              )
Golden Living Center, a/k/a Sava       )
Senior Care, LLC d/b/a McGregor        )
Downs Health and Rehabilitation        )
Center and Nell Kurtz.                 )
                                        )
    Defendant(s)                        )

**Please Take Notice That:**

Complaint was filed on November 22, 2016.

An extension of time was requested by counsel for Defendants on January 19, 2017, well beyond the time for such a request.

Notwithstanding, the Clerk of Court granted Defendant's request and specified MARCH 4, 2017 for Nell Kurtz and MARCH 7, 2017 for Defendants GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center.

No answer was filed or served by these extended dates.

To date, no answer has been filed.

Counsel for Defendants filed Motions to Dismiss, without filing an answering, on March 8, 2017. No answer has been filed and the time has clearly run.

On March 27, 2017, I filed a Motion for Entry of Default, which the Clerk took under advisement, researching both timing and appropriateness.

Default was entered by the Clerk of Court on March 29, 2017.

Accompanying this calendar request are a Motion for Entry Default Judgement, Affidavit in Support of said Motion with an Exhibit.

I request that you place this matter on Pitt's County's next Civil Superior Court Calendar, which I understand will be April 17, 2017. I estimate that it will take roughly 1 hour to make my presentation.

Respectfully submitted, this 6th day of April 2017.

Rene' Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, NC 27870
(252) 529-3911

FILED

2017 APR -6 PM 4:33

PITT COUNTY, C.S.C.

BY _____

STATE OF NORTH CAROLINA
County Of PITT

FILE NO: 16-CVS-2712
FILM NO:
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

RENE ROBINSON, individually
and as ADMINISTRATRIX of the
ESTATE OF VELVET LEE FOOTE

    Plaintiff(s)

    Vs.

GGNSC HOLDINGS, LLC d/b/a
Golden Living Center, a/k/a Sava
Senior Care, LLC d/b/a McGregor
Downs Health and Rehabilitation
Center and Neil Kurtz.

    Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF HEARING**

    **PLEASE TAKE NOTICE THAT** on April 17, 2017, the Plaintiff(s) RENE ROBINSON, individually and as ADMINISTRATRIX of the ESTATE OF VELVET LEE FOOTE, will bring on for hearing their Motion Entry of Default Judgement by Judge at 10:00 a.m. or soon thereafter as the matter may be heard.

This the _6th_ day of April 2017

Rene' Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, NC 27870
Telephone: (252) 529-3911

# CERTIFICATE OF SERVICE

Today, I have served the following documents: Notice of Hearing, Calendar Request, Motion of Entry of Default Judgement and Affidavit in Support of said Motion.

**MANNER:** ___**RR**___ I have deposited these documents in the US Mail addressed as follows:

**SERVED ON:**

Blan Allgood, Esq.
Bovis, Kyle, Burch & Medlin, LLC
800 Green Valley Road, Suite 102
Greensboro, NC 27408
balligood@boviskyle.com
Phone: (336) 907-3265
Fax: (336) 907-4178

Neil Kurtz, MD
5220 Tennyson Pkwy., Suite 400
Plano, Texas 75024

This, the 6th day of April, 2017

Rene' Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, NC 27870
(252) 529-3911

FILED .

2017 MAR 29  AM 10: 20

PITT COUNTY, C.S.C.

STATE OF NORTH CAROLINA          FILE NO: 16-CVS-2712
County Of PITT                   FILM NO:
                                 IN THE GENERAL COURT OF JUSTICE
                                 SUPERIOR COURT DIVISION

RENE ROBINSON, individually        )
and as ADMINISTRATRIX of the       )
ESTATE OF VELVET LEE FOOTE         )
                                   )
        Plaintiff(s)               )
                                   )
        Vs.                        )          **MOTION FOR**
                                   )        **ENTRY OF DEFAULT**
GGNSC HOLDINGS, LLC d/b/a           )
Golden Living Center, a/k/a Sava   )
Senior Care, LLC d/b/a McGregor    )
Downs Health and Rehabilitation    )
Center and Neil Kurtz.             )
                                   )
        Defendant(s)               )

## MOTION

RENE ROBINSON, individually and as ADMINISTRATRIX of the ESTATE OF VELVET LEE FOOTE,
Plaintiff(s), appears before this Honorable Court, Pursuant to (Rule 55 NC Rules of Civ. Pro.) and moves
for Entry of Default against Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a
Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz. In
support therefor, Plaintiff(s) respectfully offers the Court the following:

**(1)** This is an action for recovery of damages sustained as a result of a Medical Negligence/Personal
Injury inflicted by Defendant(S) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava
Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz;

**(2)** The damages sought are not fixed;

**(3)** Accordingly, should the Clerk of Court find this motion in order, Plaintiff(s), prays for entry of
Default against Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava
Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz
pending Judgement by Default to be determined at a later date by a Presiding Judge;

**(4)** Defendant(s) have failed to answer within the time allowed, specifically March 4, 2017 for Defendant Niel Kurtz and March 7, 2017 for GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center, as ordered by the Clerk of Court dated February 3, 2017; responsive pleadings were not filed within the time allowed. No Answer has been filed.

**(5)** Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz are liable to Plaintiff(s) for damages by reason of the facts as shown in the Underlying Complaint and Affidavit attached hereto Exhibit I.

**(6)** Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz are neither an Infant, Incompetent person nor otherwise under any disability.

**WHEREFORE, Plaintiff(s) pray the Court to ENTER DEFAULT against Defendant(S)** GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz.

This, the _27th_ day of March, 2017.

Rene' Robinson Pro Se
112 Gowen Drive
Roanoke Rapids, North Carolina 27870
(252) 529-3911

FILED

2017 MAR 29  AM 10: 20

PITT COUNTY, C.S.C.

STATE OF NORTH CAROLINA
County Of PITT

FILE NO: 16-CVS-2712
FILM NO:
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

RENE ROBINSON, Individually )
and as ADMINISTRATRIX of the )
ESTATE OF VELVET LEE FOOTE )
                                    )
        Plaintiff(s)                )
                                    )
    Vs.                             )        AFFIDAVIT IN SUPPORT
                                    )        OF MOTION FOR ENTRY
GGNSC HOLDINGS, LLC d/b/a           )        OF DEFAULT
Golden Living Center, a/k/a Sava    )
Senior Care, LLC d/b/a McGregor     )
Downs Health and Rehabilitation     )
Center and Neil Kurtz.              )
                                    )
        Defendant(s)                )

1.This is an action for damages from personal injuries inflicted upon Plaintiff(s) on November 22,2014 at approximately 6:41 P.M.; when LPN S. Gay was summoned into Ms. Foote's non-monitored/non-Shadow attendee room because she was found demonstrating and displaying symptoms of severe nausea, vomiting and diarrhea.

2. Nurses Notes state and show that Ms. Foote symptoms were so severe that Ms. Foote had lost the ability to breathe on her own and severe loss of Oxygen saturation. Nurse called for emergency Medical Transport of Ms. Foote to Vidant Medical Trauma Centers Emergency Department. Due to understaffing States by Nursing Director and not having the available monitoring by technology of patients and /or Human Shadowerers, Ms. Foote ingested a lethal substance orally which bought on the onset of her emergent symptoms and being seen at Vidant Medical Trauma Centers Emergency Department and and Admittance to the Vidant Medical Center Intensive Care Unit.

3.Plaintiff(s) filed this action on November 22, 2016 at 4:51P.M.

4. Plaintiff(s) caused Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center to be served In accordance with Rule 4, NC Rule Civ. Pro on or after November 22, 2016 personally by Frank Cassiano, Esq. by hand to Director of Golden Living Center Hall Garland; Neil Kurtz was served by Certified Return Receipt Mail on December 29, 2016 as evidenced by the Affidavit of Service attached hereto as Exhibit (1).

5. Defendant(s) has not filed any answer or motion for extension of time as required by NC Rules of Civil Procedure and the time for doing so has now expired.

6. Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz has made absolutely no attempt to objection to entry of said Default;

7. Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz are neither an infant, incompetent person nor otherwise under any disability, and;

8. Defendant(s) GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC d/b/a McGregor Downs Health and Rehabilitation Center and Neil Kurtz are liable to Plaintiff(s) for Damages.

With this showing, Plaintiff(s) has nothing further to offer at this time.

Rene' Robinson Pro Se

Sworn to and Subscribed before me
This the _____ day of _____, 2017.

_____
                NOTARY PUBLIC

My Commission Expires

_____

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

**DEFENDANT GGNSC HOLDINGS, LLC's**
**<u>MOTION TO DISMISS</u>**
N.C. R. Civ. P. 9(j), 12(b)(6)

---

Pursuant to Rules 9(j) and 12(b) (6) of the North Carolina Rules of Civil

Procedure, the defendant GGNSC Holdings, LLC (sued as "GGNSC HOLDINGS, LLC

d/b/a Golden Living Center") hereby respectfully moves to dismiss this action. In

support of this motion, defendant shows the following:

1.　　Plaintiff filed this action on November 22, 2016. The complaint arises from

Velvet Foote's admission to a Golden Living nursing home "here in Greenville, North

Carolina." (Complaint ¶ 4.)

2.　　The complaint alleges a litany of purported negligent acts and omissions

by a health care provider. (*Id.* at ¶ 19 (a) – (z)).

3.　　Under North Carolina law, any complaint alleging medical malpractice by a

health care provider *shall* be dismissed unless "the pleading specifically asserts that the

medical care and all medical records pertaining to the alleged negligence that are

available to the plaintiff after reasonable inquiry have been reviewed" by an appropriate

expert who is expected to qualify under North Carolina Rule of Evidence 702 and who is

willing to testify that the care did not comply with the standard of care, or the pleading

alleges facts establishing negligence under the doctrine of *res ipsa loquitur*. *See* N.C. R. Civ. P. 9(j).

4. The pending action constitutes a medical malpractice action as defined by N.C. Gen. Stat. § 90-21.11(2) (a).

5. The complaint fails to allege that **all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry** have been reviewed by an appropriate expert who is willing to testify that the care did not comply with the applicable standard of care. The failure to comply with this mandatory language of Rule 9(j) constitutes a fatal pleading defect requiring dismissal of the action. *See, e.g., Alston v. Hueske,* _____ N.C. App. _____, 781 S.E.2d 385 (2016); *Fintchre v. Duke Univ.,* _____ N.C. App. _____ , 773 S.E.2d 318 (2015).

6. As a result of the above-stated pleading defect, the complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure.

WHEREFORE, for the foregoing reasons, defendant GGNSC Holdings, LLC respectfully requests that the court enter an Order dismissing this action, along with such other relief as to the court seems just and proper.

This the ‾3‾/‾ day of March, 2017.

_____
Brian H. Alligood
Attorney for Defendant GGNSC
Holdings, LLC

OF COUNSEL:

BOVIS KYLE BURCH & MEDLIN
800 Green Valley Rd., Suite 102
Greensboro, NC 27408
Telephone: (336) 907-3265

2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT GGNSC HOLDINGS, LLC's MOTION TO DISMISS** was served upon the parties to this action by mailing a copy thereof by first-class, postage pre-paid mail to the following counsel of record:

> Mr. Frank A. Cassiano, Jr.
> P O Box 7383
> Greenville, NC 27835
> *Attorney for Plaintiffs*

This the ̲3̲1̲ day of March, 2017.

Brian H. Alligood
Attorney for Defendant GGNSC
Holdings, LLC

OF COUNSEL:

BOVIS KYLE BURCH & MEDLIN
800 Green Valley Rd., Suite 102
Greensboro, NC 27408
Telephone: (336) 907-3265

3

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

        Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

        Defendants.

**DEFENDANT NEIL KURTZ's
<u>MOTION TO DISMISS</u>**
N.C. R. Civ. P. 12(b) (2)

---

Pursuant to Rule 12(b) (2) of the North Carolina Rules of Civil Procedure, the defendant Neil Kurtz, M.D. hereby respectfully moves to be dismissed from this action. In support of this motion, Dr. Kurtz shows the following:

1.    Plaintiff filed this action on November 22, 2016. The complaint arises from Velvet Foote's admission to a Golden Living nursing home "here in Greenville, North Carolina." (Complaint ¶ 4.)

2.    In addition to naming GGNSC Holdings, LLC, the complaint names "Neil Kurtz" as a defendant. The complaint does so while acknowledging that Dr. Kurtz is not licensed to practice in North Carolina and is a citizen and resident of Plano, Texas. (*Id.* at ¶ 6.)

3.    The complaint alleges no basis under which the court may properly exercise personal jurisdiction over Dr. Kurtz, while expressly stating his foreign state residence.

4.      Because there is no basis for the exercise of personal jurisdiction over this Texas resident, Dr. Kurtz respectfully moves to be dismissed from this action, under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure and the minimum contacts Due Process requirements of the Fourteenth Amendment to the United States Constitution *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

WHEREFORE, for the foregoing reasons, defendant Neil Kurtz, M.D. respectfully requests that the court enter an Order dismissing him from this action, along with such other relief as to the court seems just and proper.

This the ___ day of March, 2017.

Brian H. Alligood
Attorney for Defendant Neil Kurtz, M.D.

OF COUNSEL:

BOVIS KYLE BURCH & MEDLIN
800 Green Valley Rd., Suite 102
Greensboro, NC 27408
Telephone: (336) 907-3265

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT NEIL KURTZ's MOTION TO DISMISS** was served upon the parties to this action by mailing a copy thereof by first-class, postage pre-paid mail to the following counsel of record:

> Mr. Frank A. Cassiano, Jr.
> P O Box 7383
> Greenville, NC 27835
> *Attorney for Plaintiffs*

This the _3/_ day of March, 2017.

Brian H. Alligood
Attorney for Defendant Neil Kurtz, M.D.

OF COUNSEL:

BOVIS KYLE BURCH & MEDLIN
800 Green Valley Rd., Suite 102
Greensboro, NC 27408
Telephone: (336) 907-3265

3

STATE OF NORTH CAROLINA
COUNTY OF PITT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 16-CVS-2712

RENE ROBINSON, individually, )
and as ADMINISTRATRIX of the )
ADMINISTRATRIX of the )
ESTATE OF VELVET FOOTE, )
    Plaintiffs, )
     )
     )
v. )
     )
GGNSC HOLDINGS, LLC dba )
GOLDEN LIVING CENTER, )
AKA, SAVA SENIOR CARE, )
LLC, dba MCGREGOR DOWNS )
HEALTH and )
REHABILITATION CENTER, )
NEIL KURTZ )
    Defendants )

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO N.C. R. Civ. P., Rule 9(j) and
Rule 12(b)(6)**

    NOW COME Plaintiffs Rene Robinson, individually, and as Administratrix of the
Estate of Velvet Foote, by and through her undersigned attorney and respectfully submits
this Memorandum of Law in Opposition to Defendants' Motion to Dismiss pursuant to
Rule 9(j) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

## FACTUAL BACKGROUND

    Plaintiff Rene Robinson is Velvet Foote's daughter and prior to her death
she was Ms. Foote's primary care giver; and was appointed to serve as the
Administratrix of her Estate, Ms. Foote having died on January 15, 2015. Two
months prior to her death, Ms. Foote was admitted to defendant GGNSC Holdings,
LLC dba Golden Living in Greenville, North Carolina, November 13, 2014. She
presented at the time of her admission as an advanced Alzheimer Patient with an
unsteady gait and a propensity to eat most anything in her reach: including but not
limited to toilet paper, coins, etc.

    As recorded in her admit note: Velvet Foote was alert and responsive despite
having the following diagnosis: Anxiety disorder, depressive disorder, atrial

1

fibrillation, catatonic schizophrenia; she was on a soft diet with honey thickened liquids. She tolerated meds crushed. She was fed by staff by spoon and had a good appetite.

The nursing notes, as sparse as they are, noted nothing significant between November 14 and November 17, 2014 when staff reported observing Ms. Foote eating butter off of dining tables, confirming her propensity to ingest any and everything she could lay her hands on. On the November 18, 2014, Ms. Foote was observed watching a comedy on TV and responded readily to Terry Edwards in Recreation Services. On November 20, 2014, Staff's efforts at interaction were less than remarkable. Ms. Foote answered questions in the early interview by deflection but eventually answered appropriately as to her name. Throughout this time, Ms. Foote continued on a pureed diet with nectar fluid; she continued to eat well.

On the day of November 22, 2014, without further explanation, facility records indicate that Ms. Foote did not eat breakfast, nor lunch. However, around diner an LPN entered Ms. Foote's room with towels, a basin, and a bottle of body wash containing an image of fruit on the label. Upon information and belief, to be borne out in discovery the LPN exited the room before washing Ms. Foote, leaving behind the bottle of body wash within Ms. Foote's reach.

At 18:41 on November 22, 2014 LPN S. Gay recorded that help was summoned into Ms. Foote's room because she had been found with severe nausea, vomiting, and diarrhea, had aspirated, and had stopped breathing. Defendant heard Nurse EMS and Ms. Foote was transferred to Vidant Trauma Medical Center where she was diagnosed with asphyxiated pneumonia and sepsis, an infection from which she died on 15 January 2015 in the Halifax Regional Medical Center.

Plaintiffs Complaint is one sounding in ordinary negligence based on common law duties of care; that is, Ms. Foote was injured by the contents of the bottle of body wash negligently left in her room at about 6:00 PM at a time when she was not under observation and had not eaten all

2

day. As a consequence of this negligence, and the believed ingestion of the body wash, Ms. Foote experienced a condition that ultimately resulted in her death. Accordingly, this Complaint is one that alleges ordinary negligence and not medical negligence, as defined in N.C. Gen, Stat. § 90-21.11 and should not be dismissed for Plaintiffs' failure to comply with N.C. R. of Civ, Pro, 9(j).

## SINCE PLAINTIFFS* COMPLAINT DOES NOT ALLEGE MEDICAL NEGLIGENCE AND THERE IS NO NEED TO COMPLY WITH RULE 9(J), IT SHOULD NOT BE DISMISSED

In North Carolina, a "medical malpractice action" is defined by statute as "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. §90-21.11. Pursuant to this statute, a hospital constitutes a "health care provider." Id, The term "professional services" means "an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominately mental or intellectual, rather than physical or manual." Sturgill v^.Ashe Mem'l Hosp.. Inc.. 186 N.C. App. 624,628.652 S.E.2d 302, 305 (2007),

Courts in North Carolina have repeatedly held that corporate negligence claims against a hospital does not require certification of Rule 9(j). North Carolina appellate courts have previously established that some negligence claims asserted against a health care provider do not fit within the statutory definition of medical malpractice. In Lewis v. Setty, 130 N.C.App. 606, 503 S.E.2d 673 (1998), the plaintiff alleged that the physician was negligent in failing to lower the examination table prior to transferring the plaintiff to his wheelchair. The action was dismissed by the trial court for failure to comply with Rule 9(j). Id. at 607, 503 S.E.2d at 673. On appeal, Court of Appeals held that compliance with Rule 9(j) was not required because the cause of action did not arise out of the "furnishing of professional services" and therefore did not fit the definition of a medical malpractice action. Id. at 608, 503 S.E.2d at 674. See also Taylor v. Vencor, 136 N.C.App. 528, 525 S.E.2d 201, disc. review denied, 351 N.C. 646, 543 S.E.2d 884 (2000) (holding the claim was not a medical malpractice action where the plaintiff sued a nursing home for failure to adequately supervise her elderly mother while she smoked cigarettes.

3

In Lewis, a patient was injured while being transferred from the examination table to her wheelchair. The patient sued the defendant for failure to use reasonable care in not raising and lowering the head of the examining table in the course of performing the plaintiff's examination. In reversing the trial court's dismissal of plaintiff's claim for failure to comply with Rule 9(j), this Court held that "[a]ny negligence which may have occurred when the defendant and [plaintiff's live-in assistant] attempted to move the plaintiff from the examination table back to his wheelchair falls squarely within the parameters of ordinary negligence." Lewis v. Setty, 130 N.C.App. 606, 608, 503 S.E.2d 673, 674 (1998).

Likewise in Taylor, the observance and supervision of the plaintiff, when she smoked in the designated smoking area, did not constitute an occupation involving specialized knowledge or skill. Preventing a patient from dropping a match or a lighted cigarette upon themselves, while in a designated smoking room, does not involve matters of medical science. Such behaviors are properly applied to the standards of ordinary negligence. The trial court's granting of defendants' motion to dismiss was error in regard to plaintiff's ordinary negligence claim. Taylor v. Vencor Inc., 136 N.C. App. 528, 525 S.E.2d 201 (2000)

A more apt comparison to the Foote case at bar is Taylor v. Vencor, Inc., where like the case at bar, the patient was a mental patient for which more particular non-medical care was required. That is in Taylor, Defendant was informed that the patient needed monitoring when she smoked for her care and safety. The failure of Defendant to watch the patient as she smoked resulted in her catching her clothes alight and her injury from matches she used to smoke her cigarettes. Similarly, Ms. Foote, a mental patient, well known to defendants to place anything into her mouth that could be ingested, which was an infirmity that required assistance of the Defendant staff to help her remain safe from injury. Not being properly watched when in the presence of the ingestible body wash resulted, upon information and belief, in Ms. Foote doing what Defendants understood she would likely do. In both cases what was required did not require clinical judgment and intellectual skill; merely required ordinary care to which both were entitled in Defendant

4

care facility.

In order for the Plaintiffs to establish that GGNSC's employees breached the appropriate standard of care at trial, the Plaintiffs will be required to present the testimony of an expert who understands and can explain the type of medical care required by patients with mental health illnesses. See, e.g.. Smith. 159 N.C. App. at 195, 582 S.E.ld at 671-72. An expert will be required to know and explain the consequences of ingesting liquids of the type ingested by Ms. Foote; to explain the consequences of the illness caused by ingesting such liquid; and to know and explain the impact of such illness upon her cause of death. These experts are needed to explain the consequence of this ordinary negligence and not to testify regarding any medical care that was provided. Accordingly, because Plaintiffs' claims relate to negligence in clinical care and are not based on medical decisions that required clinical judgment and intellectual skill, Plaintiffs' claims are based on negligence in the provision of professional services and arc not medical malpractice claims, Sturgill. 186 N.C. App, at 630, 652 S.E,2d at 306.

In *Norris v. Rowan Memorial Hospital, Inc.,* the plaintiff sued the hospital for failure of its nurses to raise her bed side rails, causing her to fall out of her bed and be injured. The Court of Appeals held that the nurses' actions "did not involve the rendering or failure to render professional nursing or medical services requiring special skills, [and that] expert testimony on behalf of the plaintiff as to the standard of due care prevailing among hospitals in like situations is not necessary to develop a case of negligence for the jury." 21 N.C.App. 623, 626, 205 S.E.2d 345, 348 (1974).

The Court of Appeals reviewed Horsley v. Halifax Reg'l Med. Ctr., Inc., 725 S.E.2d 420 (N.C. App., 2012); Cert was denied by the N.C. Supreme Court. On 17 June 2008, Massie was admitted to the psychiatric unit of Halifax Regional Medical Center for a recurring nervous condition. Massie had difficulty walking and standing, and at the time of her admission, her husband, Denny, sought to bring Massie's walker or cane into the hospital. Denny was told not to include these items, because the hospital would provide Massie with everything she needed. The psychiatrist who admitted Massie then informed the nurses that she had trouble standing. On the

5

evening of 17 June 2008, Massie was preparing to walk to the cafeteria for her evening meal. She exited her room and stood against the wall near the nurses' station. While standing there she said aloud that she was going to fall. None of the nurses offered Massie a wheel chair, cane, or walker. She then fell to the floor and sustained injuries. The Court of Appeals concluded that the decision of whether to offer a cane to a patient who has trouble walking is not one that requires specialized skill. As a result, expert testimony on the matter is not necessary to develop a case of negligence for the jury. Accordingly, we reverse the decision of the trial court dismissing plaintiffs' complaint and assessing defendant's costs against plaintiffs.

Again, the allegations of negligence in the present case are consistent with cases involving claims against hospitals that our courts have deemed to be in the nature of ordinary negligence. For example, in Taylor v. Vencor, Inc., 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (2000), the plaintiffs claim against the defendant nursing home was for ordinary negligence where the plaintiff alleged that the nursing home was negligent for failing to supervise a patient while she was smoking, Likewise, in Allen v. County of Granville. 691 S.E,2d 124, 127 (N.C. App. 2010), the plaintiffs claim against the defendant medical center was for ordinary negligence where the plaintiff alleged the medical center failed to supervise a discharged patient who was recently treated with seizures until a responsible adult arrived to transport him home. See also Lewis v. Setty. 130 N.C. App. 606, 608, 503 S.E.2d 673, 674 (1998) (claim was for ordinary negligence where plaintiff alleged defendant was negligent in the course of transferring the plaintiff from an examining table to her wheelchair, as the removal of the plaintiff from the examination table did not involve specialized knowledge or skill, as it was predominately a physical activity); Acosta v. Byrum. 180 N.C. App. 562, 573, 638 S.E.2d 246, 253 (2006) (claim for ordinary negligence where plaintiff claimed the defendant was negligent in providing a patient medical access code to a third-party because it qualified as an administrative act, not one involving direct patient care). Like the allegations of negligence here, the observance and supervision of the plaintiffs in Taylor and Allen did not involve "specialized knowledge or skill." Taylor. 136 N.C. App. at 530, 525 S.E.2d at 203.

6

In conclusion, since the allegations in Plaintiffs' Complaint did not focus on negligence in the provision of professional services to Ms. Foote, Plaintiffs did not bring a medical malpractice action, but one of ordinary negligence. See Sturgill. 186 N.C. App, at 630, 652 S.E.2d at 306. Plaintiffs' complaint was not required to include the 9(j) certification.   Therefore, Defendants' above described motion to dismiss should be denied

This the _6th_ day of June 2017.

_____
Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiffs

7

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the forgoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, PURSUANT TO N.C. R. Civ. P., Rule 9(j) and Rule 12(b)(6)** by Facsimilie, 336.907.4178, and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail at Rocky Mount, North Carolina, addressed to the following person at the following address which is the last address know to me:

> Brian H. Alligood
> BOVIS KYLE BURCH & MEDLIN
> 800 Green Valley Rd, Suite 102
> Greensboro, North Carolina 27804
> Telephone: (336) 907.3265
> Facsimilie: 336.907.4178
> BAlligood@boviskyle.com
> Attorneys for Defendants

This the _____ day of June 2017.

BY: _____

Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiffs

8

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

**DEFENDANTS GGNSC
HOLDINGS,LLC's AND NEIL KURTZ'S
MOTION TO SET ASIDE DEFAULT AND
MOTION FOR SANCTIONS**
N.C. R. Civ. P. 55(d), 11

Pursuant to Rules 55(d) of the North Carolina Rules of Civil Procedure, the defendants GGNSC Holdings, LLC (erroneously sued as stated above) and Dr. Neil Kurtz hereby respectfully move to set aside the entry of default that was previously entered by the Assistant Clerk of Court on or about March 22, 2017. Defendants additionally move for an award of Rule 11 sanctions as a result of the improper conduct that led to the improper entry of such default.

In support of this motion, defendants show the following:

1.     By Order of the Court, Defendant GGNSC was allowed through and including March 7, 2017 in which to serve an answer or to otherwise respond to the complaint. By separate Order of the Court, Defendant Kurtz was allowed through and including Saturday, March 4, 2017, in which to serve an answer or to otherwise respond to the complaint.

2.     On March 3, 2017, both defendants timely served Rule 12(b) motions to dismiss and concurrently that same day mailed the motions to the clerk of court for filing. The clerk's office received and filed both motions on March 9, 2017.

3.     Under Rule 12 of the North Carolina Rules of Civil Procedure, the service of the defendants' motions to dismiss stays the deadline for filing a responsive pleading until twenty (20) days after notice of the court's action in ruing on the motion or postponing its disposition until trial on the merits.

4.     Because the motions to dismiss were timely served entry of default was improper and should be set aside.

5.     The plaintiff's motion for entry of default had no good faith basis and was contrary to a basic Rule of Civil Procedure. The sequence of events by which the plaintiff sought this entry of default further smack of bad faith, not only as to underlying merit but also as to purpose and design. The relevant sequence includes, but is not limited to: (a) plaintiff's failure to serve a copy of the written motion for entry of default and a detailed affidavit (lacking notarization) until some twelve days (12) *after* filing these documents and twelve (12) days *after* entry of the default (*see* Exhibit A hereto for proof of actual service date); (b) the filing and belated service of such documents after plaintiff knew that Rule 12(b) motions had been not only served, but filed in court; (c) the subsequent filing of a motion for entry of default judgment, calendar request, detailed affidavit, and notice of hearing, all filed on Thursday, April 6, 2017, setting the motion for hearing on April 17, 2017; (d) the plaintiff's failure to serve any of the foregoing documents until Monday, April 10, 2017 – despite a certificate of service falsely attesting to purported service four days earlier; and (e) additional facts and circumstances to be presented during plaintiff's chosen hearing date.

6.     Defendants specifically request leave of court to cross-examine the named plaintiff on these and related issues during plaintiff's chosen hearing date.

7.     As a result of the plaintiff's bad faith in obtaining a default that should never have been sought, the defendants move for an entry of appropriate sanctions against the plaintiff, her counsel, and/or both.

2

WHEREFORE, for the foregoing reasons, defendants GGNSC Holdings, LLC and Neil Kurtz respectfully request that the court enter an Order setting aside the entry of default and sanctioning plaintiff and/or her counsel, along with such other relief as to the court seems just and proper.

This the 13 day of April, 2017.

Brian H. Alligood
BOVIS KYLE BURCH & MEDLIN
800 Green Valley Rd., Suite 102
Greensboro, NC 27408
Telephone: (336) 907-3265
Facsimile: (336) 907-4178
Email: BAlligood@boviskyle.com
*Attorney for Defendants GGNSC
Holdings, LLC and Neil Kurtz*



**BOVIS ✶ KYLE**

BOVIS, KYLE, BURCH & MEDLIN
800 GREEN VALLEY ROAD
SUITE 102
GREENSBORO, NORTH CAROLINA 27408-7028

GREENSBORO NC 274
PIEDMONT TRIAD AREA
14 APR 2017 PM 3 L

*Wil;*
*April 18, 2017*
*In Mail Box*

Ms. Rene Robinson
112 Gowen Dr.
Roanoke Rapids, NC 27870

27870-950812

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

<u>O R D E R</u>

This action came on before the Court for oral argument and hearing on the

plaintiff's motion for entry of default judgment during the Court's civil motions session of

Monday, April 17, 2017. Plaintiff Rene Robinson appeared *pro se*. In addition, Frank

Cassiano, Jr., Esq. joined plaintiff at the hearing and attempted to sit beside her at

counsel's table during the argument. Because Mr. Cassiano's law license is currently

under administrative suspension, the Court instructed Mr. Cassiano to leave the table,

whereupon Mr. Cassiano remained as a witness to the hearing in the public seating

area of the courtroom. Brian H. Alligood, Esq., of the law firm Bovis, Kyle, Burch &

Medlin, appeared for the defendants.

Defense counsel stated and demonstrated with USPS tracking information that

plaintiff's motion for entry of default judgment, as well as plaintiff's earlier obtained entry

of default, were not actually deposited into the U.S mail to him at his current address

until Monday, April 10, 2017. The same items were not received by defense counsel

until Wednesday, April 12, 2017. Given the untimely service, the Court in its discretion

received and considered the defendants' response motion to set aside default and motion for sanctions during this same hearing.

After review of the court file, the arguments of the parties, materials submitted during hearing, and testimony under oath provided by the plaintiff, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On February 3, 2017, the Clerk of Court entered an order allowing defendant Neil Kurtz through and including March 4, 2017 in which to serve an answer or otherwise respond to the complaint. On the same day, the Clerk of Court entered an order allowing defendant GGNSC Holdings, LLC through and including March 7, 2017 in which to serve an answer or otherwise respond to the complaint.

2. Defense counsel served separate Rule 12(b) motions to dismiss on behalf of both defendants on March 3, 2017. Defense counsel mailed these motions to the Clerk of Court for filing that same day.

3. The defendants' motions to dismiss were stamped filed in the Clerk's office on March 9, 2017.

4. On March 29, 2017 a motion for entry of default and a supporting affidavit of plaintiff were filed in the Clerk's office. The affidavit contains blank notary information. Plaintiff acknowledged that Mr. Cassiano filed this motion on her behalf.

5. Also on March 29, 2017, an Assistant Clerk of Court signed and filed an Entry of Default.

6. On April 6, 2017, Mr. Cassiano, again on behalf of plaintiff, filed a motion for entry of default judgment. Also filed that same day were a supporting affidavit of

plaintiff, a calendar request, and a notice of hearing setting the motion for hearing on April 17, 2017. The plaintiff's affidavit filed on April 6, 2017, closes with a "Calculation of Damages" section in which plaintiff calculates total damages of $21,124,000.00. According to the stated calculations, plaintiff arrived at this figure by assigning a value of $528,100.00 to the death of an 80 year old woman, multiplying that figure by a factor of 10 (in recognition of one child, two grandchildren, and seven great-grandchildren), and then multiplying that resulting total by a factor of 4 for punitive damages.

      7.     Although the notice of hearing for the motion for entry of default judgment includes a certificate of service signed by the plaintiff indicating that this document, the calendar request, the motion for entry of default judgment, and the supporting affidavit were served on defense counsel on April 6, 2017, the documents actually were not placed in the mail to defense counsel's current address until April 10, 2017, as evidenced by USPS tracking results affixed to the defendants' motion to set aside default. This same package contained the first attempted service of the earlier filed motion for entry of default.

      8.     On Wednesday, April 12, 2017, defense counsel first received the motion for entry of default, the plaintiff's supporting affidavit, the motion for entry of default judgment, its supporting affidavit, the calendar request, and the notice of hearing setting the motion for entry of default judgment for hearing on April 17, 2017.

      9.     Plaintiff testified that she is, and has been for several years, a paralegal.

      10.    Defense counsel stated to the Court that he incurred 8.7 hours of time in reviewing the plaintiff's filings, preparing his response, and traveling to and from the courthouse for the noticed hearing, in addition to the time spent at court for calendar call

and hearing, which was approximately 2.3 hours. Defense counsel additionally "rounded down" his mileage to 160 miles each way from and back to Greensboro and applied a per mileage cost rate of fifty cents per mile. Defense counsel incurred hotel expense of slightly over $120.00, but rounded the total down to $120.00.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court issues the following conclusions of law:

1.     Under Rule 12 of the Rules of Civil Procedure, the defendants' timely service of motions to dismiss under Rule 12(b) tolls the deadline for serving an answer to the plaintiff's complaint until twenty days after notice of the Court's action in ruling on the motions to dismiss or postponing its disposition until trial on the merits.

2.     Because the defendants did timely serve motions to dismiss under Rule 12(b) before March 4, 2017, entry of default was improvidently allowed. Good cause for setting aside the entry of default has therefore been shown.

3.     There was no good faith basis upon which to seek an entry of default against the defendants given that motions to dismiss had been previously served and given further that the motions to dismiss had been filed with the Court for some 20 days as of the date that the motion for entry of default was first presented to the Clerk of Court.

4.     The Court further finds that the plaintiff has in her filings stated multiple misrepresentations to the Court in an effort to improperly obtain a default and default judgment. Such misrepresentations include the statement in her affidavit (filed March 29, 2017) that neither defendant obtained an extension of time with the time for doing so

"now expired," and the statement that plaintiff served the motion for entry of default judgment on April 6, 2017, when, in fact, she did not do so until later.

## RULINGS OF THE COURT

NOW, THEREFORE, for the above stated reasons, the Court rules as follows:

1. The defendants' motion to set aside default is ALLOWED;

2. The Court DENIES plaintiff's motion for default judgment;

3. The Court ALLOWS the defendants' motion for sanctions in the following specifics: (a) Plaintiff shall reimburse the defendants for 11 hours of attorney's fees at the rate of $180.00 per hour, for a total attorney's fee of $1,980.00; (b) Plaintiff shall reimburse the defendants for defense counsel's roundtrip mileage necessitated by the above-discussed motions, which mileage totals 320 roundtrip miles at the rate of $0.50 per mile, for a total mileage reimbursement of $160.00; (c) Plaintiff shall reimburse the defendants for defense counsel's hotel accommodations in the amount of $120.00. Plaintiff is ORDERED to pay the total amount of $2,260.00 to the law firm of Bovis, Kyle, Burch & Medlin, LLC on or before May 15, 2017.

4. Plaintiff is ORDERED AND DIRECTED to retain the computer with which she drafted the motion for entry of default, motion for entry of default judgment, supporting affidavits, calendar request, and notice of hearing. Plaintiff is further ORDERED AND DIRECTED to retain all data pertaining to these documents and not to delete, alter of modify any electronically stored data relative to these documents.

5.      The Court reserves ruling on any remaining pending or future motions.

6.      The undersigned Superior Court Judge retains jurisdiction over this civil action going forward.

SO ORDERED, this 20th day of April, 2017.

HON. JEFFERY B. FOSTER
SUPERIOR COURT JUDGE PRESIDING

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

ANSWER TO ORDER

This action came on before the Court for oral argument and hearing on the plaintiff's motion for entry of default judgment during the Court's civil motions session of Monday, April 17, 2017. I, Plaintiff, Rene Robinson appeared *pro se* was ordered to pay a sanction of $2,260.00 to Defendant's Attorney Brian H. Alligood within 15 days. Order drawn up by Defendant's Attorney and emailed on April 19, 2017 to the presiding Judge on the hearing date of April 17, 2017; the Honorable Judge Jeffery B. Foster, signing of said order.

Please see attached proof of payment of Sanction. I, Plaintiff, Rene Robinson, Pro Se, as of April 27, 2017 have not received the order with displaying the presiding Hon. Judge Jeffery B. Foster signature. But, it was ordered within the hearing that it shall be paid within 15 days.

I have complied to the order and have proof of service of paid sanction to Defendants attorney Brian H. Alligood; Hon. Judge Jeffrey B. Foster; Pitt County Court Clerk, by sending the payment and notification of payment by USPS certified return receipt restricted signature.

Rene' Robinson, Pro Se
112 Gowen Drive
Roanoke Rapids, NC 27870
(252) 529-3911

STATE OF NORTH CAROLINA

PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CvS 2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a Sava Senior Care,
LLC d/b/a McGregor Downs Health and
Rehabilitation Center, and NEIL KURTZ,

Defendants.

O R D E R

This action came on before the Court for oral argument and hearing on the

plaintiff's motion for entry of default judgment during the Court's civil motions session of

Monday, April 17, 2017. Plaintiff Rene Robinson appeared *pro se.* In addition, Frank

Cassiano, Jr., Esq. joined plaintiff at the hearing and attempted to sit beside her at

counsel's table during the argument. Because Mr. Cassiano's law license is currently

under administrative suspension, the Court instructed Mr. Cassiano to leave the table,

whereupon Mr. Cassiano remained as a witness to the hearing in the public seating

area of the courtroom. Brian H. Alligood, Esq., of the law firm Bovis, Kyle, Burch &

Medlin, appeared for the defendants.

Defense counsel stated and demonstrated with USPS tracking information that

plaintiff's motion for entry of default judgment, as well as plaintiff's earlier obtained entry

of default, were not actually deposited into the U.S mail to him at his current address

until Monday, April 10, 2017. The same items were not received by defense counsel

until Wednesday, April 12, 2017. Given the untimely service, the Court in its discretion

received and considered the defendants' response motion to set aside default and motion for sanctions during this same hearing.

After review of the court file, the arguments of the parties, materials submitted during hearing, and testimony under oath provided by the plaintiff, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.     On February 3, 2017, the Clerk of Court entered an order allowing defendant Neil Kurtz through and including March 4, 2017 in which to serve an answer or otherwise respond to the complaint. On the same day, the Clerk of Court entered an order allowing defendant GGNSC Holdings, LLC through and including March 7, 2017 in which to serve an answer or otherwise respond to the complaint.

2.     Defense counsel served separate Rule 12(b) motions to dismiss on behalf of both defendants on March 3, 2017. Defense counsel mailed these motions to the Clerk of Court for filing that same day.

3.     The defendants' motions to dismiss were stamped filed in the Clerk's office on March 9, 2017.

4.     On March 29, 2017 a motion for entry of default and a supporting affidavit of plaintiff were filed in the Clerk's office. The affidavit contains blank notary information. Plaintiff acknowledged that Mr. Cassiano filed this motion on her behalf.

5.     Also on March 29, 2017, an Assistant Clerk of Court signed and filed an Entry of Default.

6.     On April 6, 2017, Mr. Cassiano, again on behalf of plaintiff, filed a motion for entry of default judgment. Also filed that same day were a supporting affidavit of

plaintiff, a calendar request, and a notice of hearing setting the motion for hearing on April 17, 2017. The plaintiff's affidavit filed on April 6, 2017, closes with a "Calculation of Damages" section in which plaintiff calculates total damages of $21,124,000.00. According to the stated calculations, plaintiff arrived at this figure by assigning a value of $528,100.00 to the death of an 80 year old woman, multiplying that figure by a factor of 10 (in recognition of one child, two grandchildren, and seven great-grandchildren), and then multiplying that resulting total by a factor of 4 for punitive damages.

7.　　Although the notice of hearing for the motion for entry of default judgment includes a certificate of service signed by the plaintiff indicating that this document, the calendar request, the motion for entry of default judgment, and the supporting affidavit were served on defense counsel on April 6, 2017, the documents actually were not placed in the mail to defense counsel's current address until April 10, 2017, as evidenced by USPS tracking results affixed to the defendants' motion to set aside default. This same package contained the first attempted service of the earlier filed motion for entry of default.

8.　　On Wednesday, April 12, 2017, defense counsel first received the motion for entry of default, the plaintiff's supporting affidavit, the motion for entry of default judgment, its supporting affidavit, the calendar request, and the notice of hearing setting the motion for entry of default judgment for hearing on April 17, 2017.

9.　　Plaintiff testified that she is, and has been for several years, a paralegal.

10.　　Defense counsel stated to the Court that he incurred 8.7 hours of time in reviewing the plaintiff's filings, preparing his response, and traveling to and from the courthouse for the noticed hearing, in addition to the time spent at court for calendar call

and hearing, which was approximately 2.3 hours. Defense counsel additionally "rounded down" his mileage to 160 miles each way from and back to Greensboro and applied a per mileage cost rate of fifty cents per mile. Defense counsel incurred hotel expense of slightly over $120.00, but rounded the total down to $120.00.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court issues the following conclusions of law:

1.     Under Rule 12 of the Rules of Civil Procedure, the defendants' timely service of motions to dismiss under Rule 12(b) tolls the deadline for serving an answer to the plaintiff's complaint until twenty days after notice of the Court's action in ruling on the motions to dismiss or postponing its disposition until trial on the merits.

2.     Because the defendants did timely serve motions to dismiss under Rule 12(b) before March 4, 2017, entry of default was improvidently allowed. Good cause for setting aside the entry of default has therefore been shown.

3.     There was no good faith basis upon which to seek an entry of default against the defendants given that motions to dismiss had been previously served and given further that the motions to dismiss had been filed with the Court for some 20 days as of the date that the motion for entry of default was first presented to the Clerk of Court.

4.     The Court further finds that the plaintiff has in her filings stated multiple misrepresentations to the Court in an effort to improperly obtain a default and default judgment. Such misrepresentations include the statement in her affidavit (filed March 29, 2017) that neither defendant obtained an extension of time with the time for doing so

"now expired," and the statement that plaintiff served the motion for entry of default judgment on April 6, 2017, when, in fact, she did not do so until later.

## RULINGS OF THE COURT

NOW, THEREFORE, for the above stated reasons, the Court rules as follows:

1.      The defendants' motion to set aside default is ALLOWED;

2.      The Court DENIES plaintiff's motion for default judgment;

3.      The Court ALLOWS the defendants' motion for sanctions in the following specifics: (a) Plaintiff shall reimburse the defendants for 11 hours of attorney's fees at the rate of $180.00 per hour, for a total attorney's fee of $1,980.00; (b) Plaintiff shall reimburse the defendants for defense counsel's roundtrip mileage necessitated by the above-discussed motions, which mileage totals 320 roundtrip miles at the rate of $0.50 per mile, for a total mileage reimbursement of $160.00; (c) Plaintiff shall reimburse the defendants for defense counsel's hotel accommodations in the amount of $120.00. Plaintiff is ORDERED to pay the total amount of $2,260.00 to the law firm of Bovis, Kyle, Burch & Medlin, LLC on or before May 15, 2017.

4.      Plaintiff is ORDERED AND DIRECTED to retain the computer with which she drafted the motion for entry of default, motion for entry of default judgment, supporting affidavits, calendar request, and notice of hearing. Plaintiff is further ORDERED AND DIRECTED to retain all data pertaining to these documents and not to delete, alter of modify any electronically stored data relative to these documents.

5.     The Court reserves ruling on any remaining pending or future motions.

6.     The undersigned Superior Court Judge retains jurisdiction over this civil action going forward.

SO ORDERED, this _____ day of _____, 2017.

_____
HON. JEFFERY B. FOSTER
SUPERIOR COURT JUDGE PRESIDING

## OFFICIAL CHECK

THE REPLACEMENT OF THIS DOCUMENT REQUIRES THE COMPLETION OF A BB&T DECLARATION OF LOSS

M16779 60172897

5009174391

6074301-ROANOKE RAPIDS - MAIN

APRIL 21, 2017

68-236/514

BRIAN H ALLIGOOD

** $2,260.00 **

**MW2260***00***

**COPY NON NEGOTIABLE**

6074301 B16064 009 00302 17:36 04/21/17

**BB&T**

OFFCHECK

RENE ROBINSON

2,260.00

CLIENT COPY



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7007 2560 0000 8295 8322

Sent To _Pitt Co. Crt. Hon Jeffry B. Foster_
Street, Apt. No.; or PO Box No. _100 W. 3rd St. 27858_
City, State, ZIP+4 _Greenville NC. 27834_

PS Form 3800, August 2006    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7007 2560 0000 8295 7813

Sent To _Pitt Co. Crt Clerk Sarabeth F. Rhodes_
Street, Apt. No.; or PO Box No. _100. W 3rd. Street 2785_
City, State, ZIP+4 _Greenville NC. 27834_ 8

PS Form 3800, August 2006

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
Domestic Mail Only; No Insurance Coverage Provided

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7007 2560 0000 8295 7721

Sent To _Brian H. Alligood Esq._
Street, Apt. No.; or PO Box No. _800 Green Valley Rd Ste 102_
City, State, ZIP+4 _Greensboro NC. 27408_

See Reverse for Instructions

---

```
ROANOKE RAPIDS
725 ROANOKE AVE
ROANOKE RAPIDS
NC
27870-9998
3665200870
04/27/2017    (800)275-8777    9:50 AM

Product                   Sale      Final
Description               Qty       Price

First-Class                1       $0.70
Mail
Letter
    (Domestic)
    (GREENSBORO, NC 27408)
    (Weight:0 Lb 1.50 Oz)
    (Expected Delivery Day)
    (Saturday 04/29/2017)
Cert Mail                  1       $8.30
RstrDel
    (@@USPS Certified Mail #)
    (7007256000082957721)          Foster
    (Recipient name:BRIAN ALLIGOOD)
Return                     1       $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940227686351268518)
First-Class                1       $0.70
Mail
Letter
    (Domestic)
    (GREENVILLE, NC 27858)
    (Weight:0 Lb 1.60 Oz)
    (Expected Delivery Day)
    (Saturday 04/29/2017)
Certified                  1       $3.35
    (@@USPS Certified Mail #)
    (7007256000082958322)          Judge
Return                     1       $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940227686351268471)
First-Class                1       $0.70
Mail
Letter
    (Domestic)
    (GREENVILLE, NC 27858)
    (Weight:0 Lb 1.60 Oz)
    (Expected Delivery Day)
    (Saturday 04/29/2017)
Certified                  1       $3.35
    (@@USPS Certified Mail #)
    (7007256000082957813)          Court Clerk
Return                     1       $2.75
Receipt
    (@@USPS Return Receipt #)
    (9590940227686351268556)

Total                             $25.35

Cash                              $30.00
```

STATE OF NORTH CAROLINA
PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 16-CVS-2712

RENE ROBINSON, Individually,
and as ADMINISTRATRIX of the
ESTATE OF VELVET FOOTE,
Plaintiff(s)

v.

GGNSC HOLDINGS, LLC d/b/a
Golden Living Center, a/k/a
McGregor Downs Health and
Rehabilitation Center, and NEIL
KURTZ
Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF OBJECTION AND
EXCEPTION TO FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

Plaintiff(s) Rene Robinson, Individually, and as Administratrix of the Estate of Velvet Foote hereby gives notice of objection and exception to the findings of fact and conclusions of law contained in the Order entered on 2 October 2017 in the Superior Court of Pitt County, by Jeffrey B. Foster, which denied the Plaintiff's motion for relief from order, new hearing, and relief from judgment pursuant to Rules 59 (a)(3),(7),(8), (9), and 60(b)(1), and (6); and in the Order dismissing Plaintiffs' complaint with prejudice entered on 28 June 2017 in the Superior Court of Pitt County Superior Court Judge, by Jeffrey B. Foster. Please see attached.

This the _____ day of November 2017.

RICHARD E. BATTS, PLLC

Richard E. Batts, Esq.
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiff

1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing Notice of Objection and Exception to Conclusions of Law and Findings of Fact by facsimile to 336-907-4178, and depositing a copy thereof in an envelope bearing sufficient postage in the United States mail at Rocky Mount, North Carolina, addressed to the following person at the following address which is the last address know to me:

> Brian J. Alligood
> Bovis, Kyle, Burch & Medlin
> 800 Green Valley Road, Suite 102
> Greensboro, NC 27408
> Telephone: (336) 907-3265
> Facsimile: (336) 907-4178

This the 2nd day of November 2017.

BY: _____
Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562

2

STATE OF NORTH CAROLINA
PITT COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 16-CVS-2712

RENE ROBINSON, Individually,
and as ADMINISTRATRIX of the
ESTATE OF VELVET FOOTE,
Plaintiff(s)

v.

GGNSC HOLDINGS, LLC d/b/a
Golden Living Center, a/k/a
McGregor Downs Health and
Rehabilitation Center, and NEIL
KURTZ
Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF APPEAL**

FILED
2017 NOV -2 AM 8:38
PITT COUNTY, C.S.C.
BY

## TO THE HONORABLE COURT OF APPEALS OF NORTH CAROLINA:

Plaintiff(s) Rene Robinson, Individually, and as Administratrix of the Estate of Velvet Foote hereby gives notice of appeal to the Court of Appeals of North Carolina from Order entered on 20 April 2017 in the Superior Court of Pitt County by Jeffrey B. Foster, Superior Court Judge, granting Defendants' motion to set aside the default, denying Plaintiffs' motion for default judgment, and allowing Defendants' motion for sanctions; the Order entered on 28 June 2017 in the Superior Court of Pitt County by Jeffrey B. Foster, Superior Court Judge, dismissing Plaintiffs' complaint and in not including dismissal without prejudice; and the final judgment entered on 2 October 2017 by Jeffrey B. Foster, in the Superior Court of Pitt County, which denied the Plaintiffs' motion for relief from order, new hearing, and relief from judgment pursuant to Rules 59 (a)(3),(7),(8), (9), and 60(b)(1), and (6), and which denied Plaintiffs' motion to amend her complaint under Rule 15(a).

1

This the 2nd day of November 2017.

RICHARD E. BATTS, PLLC


_____

Richard E. Batts, Esq.
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiff

2

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing Notice of Appeal by facsimile to 336-907-4178, and depositing a copy thereof in an envelope bearing sufficient postage in the United States mail at Rocky Mount, North Carolina, addressed to the following person at the following address which is the last address know to me:

> Brian J. Alligood
> Bovis, Kyle, Burch & Medlin
> 800 Green Valley Road, Suite 102
> Greensboro, NC 27408
> Telephone: (336) 907-3265
> Facsimile: (336) 907-4178

This the 2nd day of November 2017.

BY: _____

Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562

3

STATE OF NORTH CAROLINA

COUNTY OF PITT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-2712

RENE ROBINSON, Individually, and as )
ADMINISTRATRIX of the ESTATE OF )
VELVET FOOTE, )
                                    )
Plaintiff(s); )
                                    )
v. )
                                    )
GGNSC HOLDINGS, LLC d/b/a Golden )
Living Center, a/k/a McGregor Downs )
Health and Rehabilitation Center, and NEIL )
KURTZ )
Defendant(s). )

**MOTION
TO EXTEND TIME FOR
TRANSCRIPT CONTRACTS**

Pursuant to the provisions of Rule 6(b), of the North Carolina Rules of Civil Procedure, Plaintiff(s) in the above captioned matter hereby move the Court to extend the time within which Plaintiff(s) may submit Transcript Contract to the Court of Appeals.

1. Attorney for Plaintiff(s) has been out of the office due to a medical surgical procedure with a unanticipated complication that was performed on 14 November 2017.

2. That such time to answer or otherwise plead has not expired and Plaintiff(s) need more time to accumulate resources to properly respond.

3. That Plaintiff(s) specifically request that the Clerk extend the time to file Transcript Contracts.

This the _16th_ day of November 2017.

RICHARD E. BATTS, PLLC

BY

Richard E. Batts
Richard E. Batts, PLLC
1330 Benvenue Road
Rocky Mount, North Carolina 27804-1803
Telephone: 252.210.3421
Facsimile: 252.565.0040
Email: rbatts@attorneyrichardbatts.com
State Bar Number: 9562
Attorney on Record for Plaintiff.

STATE OF NORTH CAROLINA

COUNTY OF PITT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-2712

RENE ROBINSON, Individually, and as
ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE,

Plaintiff(s);

v.

GGNSC HOLDINGS, LLC d/b/a Golden
Living Center, a/k/a McGregor Downs
Health and Rehabilitation Center, and
NEIL KURTZ
Defendant(s);

CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a true copy of the forgoing and Motion to Extend Time for Transcript Contracts which has been filed by the Pitt County Clerk of Superior Court, and served on all parties indicated by:

     X      By facsimile delivery to ___336-907-4178___

     X      Depositing a copy hereof, postage prepaid in the United States Mail, addressed to Defendant as follows:

TO:    Brian Alligood
Bovis, Kyle, Burch & Medlin
800 Green Valley Road, Suite 102
Greensboro, NC 27408
Fax: 336-907-4178

This ___17th___ day of November 2017.

RICHARD E. BATTS, PLLC

BY _____
Richard E. Batts
1330 Benvenue Road
Rocky Mount, North Carolina 27804-1803
Telephone: 252.210.3421
Facsimile: 252.565.0040
Email: rbatts@attorneyrichardbatts.com
State Bar Number: 9562
Attorney on Record for Plaintiff

No. COA 18-706                                  THIRD DISTRICT

## NORTH CAROLINA COURT OF APPEALS

*****************************************

RENE ROBINSON, individually,           )
and as ADMINISTRATRIX OF THE           )
ESTATE OF VELVET FOOTE.                )
        PLAINTIFFS                     )
                                       )
                                       )        <u>FROM PITT COUNTY</u>
        v.                             )         NO. 16 CVS 2712
                                       )
GGNSC HOLDINGS, LLC d/b/a              )
GOLDEN LIVING CENTER, a/k/a            )
SAVA SENIOR CARE, LLC d/b/a            )
MCGREGOR DOWNS HEALTH AND              )
REHABILITATION CENTER, and             )
NEIL KURTZ                             )
        DEFENDANTS.                    )

*********************************************

## RECORD ON APPEAL

*********************************************

### INDEX

STATEMENT OF ORGANIZATION OF TRIAL COURT......................1
STATEMENT OF JURISDICTION..............................................2
CIVIL SUMMONS (ISSUED ON 25 NOVEMBER 2016)......................3
[PLAINTIFFS'] COMPLAINT (filed 22 NOVEMBER 2016)..................4
[DEFENDANTS'] MOTION AND ORDER FOR EXTENSION OF
TIME TO ANSWER PLAINTIFF'S COMPLAINT
        (filed 03 FEBRUARY 2017) .............................................12
[DEFENDANTS'] MOTION AND ORDER FOR EXTENSION OF
TIME TO ANSWER PLAINTIFF'S COMPLAINT
        (filed 03 FEBRUARY 2017) .............................................15
[DEFENDANTS'] NOTICE AND ORDER FOR SUBSTITUTION

CLERK COURT OF APPEALS
OF NORTH CAROLINA
2018 JUL -9 AM 9: 37
FILED

OF COUNSEL (filed 08 FEBRUARY 2017)................................18

[DEFENDANTS'] MOTION TO DISMISS (filed 09 MARCH 2017)..20

[DEFENDANTS'] MOTION TO DISMISS (filed 09 MARCH 2017)..23

ENTRY OF DEFAULT (filed 29 MARCH 2017)....................................26

[PLAINTIFFS'] MOTION FOR ENTRY OF DEFAULT
    (filed 29 MARCH 2017)..................................................27

AFFIDAVIT IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
    (filed 29 MARCH 2017)..................................................29

[PLAINTIFFS'] MOTION FOR ENTRY OF DEFAULT JUDGMENT
    (filed 06 APRIL 2017)....................................................31

AFFIDAVIT IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
    JUDGMENT (filed 06 APRIL 2017)............................................33

AFFIDAVIT OF NEIL KURTZ, M.D. (filed 12 APRIL 2017)...............40

[DEFENDANTS'] MOTION TO SET ASIDE DEFAULT AND
    MOTION FOR SANCTIONS (filed 17 APRIL 2017)................43

ORDER (filed 20 APRIL 2017)......................................................49

[PLAINTIFFS'] ANSWER TO ORDER (filed 01 MAY 2017)...............55

NOTICE OF APPEAL (filed 16 MAY 2017)...........................................58

[PLAINTIFFS'] MOTION TO RECONSIDER
    (filed 06 JUNE 2017)......................................................60

[PLAINTIFFS'] MOTION FOR ENTRY OF DEFAULT AND
    MOTION FOR DEFAULT JUDGMENT
    (filed 06 JUNE 2017)......................................................64

[PLAINTIFFS'] MEMORANDUM OF LAW IN OPPOSITION TO
    DEFENDANTS' MOTION TO DISMISS PURSUANT TO
    N.C.R. CIV. P., RULE 9(j)and RULE 12 (b)(6)
    (filed 06 JUNE 2017)......................................................69

EMAILS REFERENCING TRANSCRIPTS (filed 09 JUNE 2017)........77

[PLAINTIFFS'] AMENDED COMPLAINT (filed 09 JUNE 2017).......82

ORDER (filed 20 JUNE 2017).........................................................97

[PLAINTIFFS'] MOTION RELIEF FROM ORDER RULE 60(b)(1), (6);
    59(a)(3)(7)(8)(9) NEW HEARING, RELIEF FROM
    JUDGMENT (filed 12 JULY 2017)..............................................102

[PLAINTIFFS'] MEMORANDUM OF LAW IN SUPPORT OF
    MOTION RELIEF FROM ORDER RULE 60(b)(1), (6);
    59(a)(3)(7)(8)(9) NEW HEARING, RELIEF FROM
    JUDGMENT (filed 18 SEPTEMBER 2017)...............................143

ORDER (filed 02 OCTOBER 2017).....................................................168

NOTICE OF OBJECTION AND EXCEPTION TO FINDINGS OF
    FACT AND CONCLUSIONS OF LAW
    (filed 02 NOVEMBER 2017).........................................174

NOTICE OF APPEAL.....................................................................185

MOTION TO EXTEND TIME FOR TRANSCRIPT CONTRACTS...188

TRANSCRIPT DOCUMENTATION.....................................................191

AFFIDAVIT OF SERVICE.........................................................195
MOTION TO EXTEND TIME TO PRODUCE TRANSCRIPT..........200
ORDER TO EXTEND TIME TO PRODUCE TRANSCRIPT.............209
PLAINTIFF(S)-APPELLANT'S MOTION FOR EXTENSION OF
    TIME TO PRODUCE TRANSCRIPT.......................................210
AFFIDAVIT OF SERVICE BY FRANK CASSIANO, INCLUDING
    STATEMENT PERTAINING TO DR. EDWARD
    MALLORY'S REVIEW OF THE MEDICAL RECORDS
    (filed 20 APRIL 2018).................................................220
AFFIDAVIT OF SERVICE (filed 21 JUNE 2018)...................................225
STATEMENT OF TRANSCRIPT............................................................228
PLAINTIFFS' PROPOSED ISSUES ON APPEAL...............................229
STIPULATIONS OF COUNSEL............................................................230
STATEMENT REGARDING SETTLEMENT OF THE RECORD
    ON APPEAL.................................................................231
IDENTIFICATION OF COUNSEL.........................................................232
CERTIFICATE OF SERVICE OF RECORD ON
    APPEAL.......................................................................233

## STATEMENT OF ORGANIZATION OF TRIAL COURT

This is an appeal by Plaintiff, Rene Robinson, individually, and as Administratrix of the Estate of Velvet Foote, from the Order of the Trial Court granting Defendants' Motion to set aside Default and Motion for Sanctions, which was entered by the Trial Court on 20 April 2017, following a hearing of 17 April 2017; an appeal from the Order entered by the Trial Court dismissing Plaintiffs' Complaint and in not dismissing without prejudice, which was entered by the Court on 28 June 2017 following the hearing on 09 June 2017; and an appeal from the Order entered by the Trial Court denying Plaintiffs' motion for relief from order, new hearing, and relief from judgment pursuant to Rules 59(a)(3),(7), (8), (9), and 60(b)(1) and (6) and denial Plaintiffs' motion to amend complaint under Rule 15(a) entered on 02 October 2017 following a hearing of 18 September 2017; all of which were ordered in the Trial Court by Honorable Jeffrey B. Foster presiding, at the Pitt Civil Superior Court in Greenville, North Carolina.

The final Judgment of the Court was entered by the Court on 2 October 2017 and served on counsel for Plaintiffs on 11 October 2017. The Notice of Appeal of the Judgment of the Trial Court was filed by Plaintiffs with the Clerk of Superior Court of Pitt County on 2 November 2017 and served on Defendants on 2 November 2017.

The Appellant served the proposed Record on Appeal by 23 April 2018. The Appellee served objection to the Record on Appeal on 21 May 2018.

The Record on Appeal was filed in the Court of Appeals on _7-9-18_ and was docketed on _7-10-18_.

## STATEMENT OF JURISDICTION OF TRIAL COURT

Plaintiffs' commenced this action by filing of a Complaint on 22 November 2016 with the Pitt County Clerk of Superior Court for personal injury caused by Defendants. Defendant Neil Kurtz received service of process, the Complaint and Summons, by certified mail, return receipt requested on 3 January 2017; and, Defendant Hal Garland, for himself and as the Chief Administrator of GGNSC Holdings, LLC, was served the Complaint and Summons on 6 January 2017 by personal delivery by Plaintiff's then attorney, Frank A. Cassiano.

The Order of the Court dismissing Plaintiffs' complaint was filed on 28 June 2017 and served upon Plaintiffs by Defendants on 3 July 2017; and Plaintiffs' Motion for Relief from Order, Rule 60(B)(1) and Rule 59(a)(3), (7), (8), and (9) was filed with the Court on 12 July 2018. The final Decision, Order, of the Court denying Plaintiffs Motions was entered by the Court on 2 October 2017 and served on counsel for Plaintiffs on 11 October 2017. The Notice of Appeal was filed by Plaintiffs with the Clerk of Superior Court of Pitt County on 2 November 2017 and served on Defendants on 2 November 2017.

The Pitt County Superior Court Judgment adjudicates all civil matters at issue and constitutes a final judgment in a civil matter. The Court of Appeals has jurisdiction of this appeal pursuant to N.C. Gen. Stat. Sec. 7A-26 and 7A-27(b).

-3-

# STATE OF NORTH CAROLINA

**PITT** County

File No.
16-CVS-2712

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff
Ross Robinson, individually, and as Administratrix of the Estate

Address

City, State, Zip
Roanoke Rapids, NC

**VERSUS**

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Name Of Defendant(s)
GGNSC Holdings, LLC dba Golden Living Center, AKA Sava
Senior Care, LLC dba McGregor Downs Health and Rehabilitation

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
GGNSC Holdings, LLC
dba Golden Living Center, AKA Sava Senior Care, LL. McGregor
2910 McGregor Downs Road, Greenville, NC 27834

Name And Address Of Defendant 2

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
Brink, Castino, 310 South Pine Street, Greenville, NC 27834

Date Issued  11/25/2016   Time  9:16 ☒ AM ☐ PM

Signature   Katherine W. Reid

☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

---

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement   Time   ☐ AM ☐ PM

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 9/16
© 2016 Administrative Office of the Courts

## STATEMENT OF TRANSCRIPT OPTION

Per Appellate Rules 7(b) and 9(c), the trial transcript of the proceeding in this case taken by Karen Nethercutt, Court Reporter, on the 17 April 2017 session of Pitt County Superior Court, consisting of 41 pages, numbered 1-49, bound in one volume representing the hearing on Defendants Motion to Set Aside Default and Motion for Sanction, and the transcripts of the proceedings in this case taken by Miriam Dutton, Court Reporter, on the 09 June 2017, representing hearing of Defendant's Motion to Dismiss Plaintiffs Complaint under Rule 12(b)(6); and 18 September 2017 sessions of Pitt County Superior Court, representing the Hearing on Plaintiffs' Motion for Relief for Order, Rule 60 and Rule 59, consisting of pages 1-45, numbered 1-45 and 1-35 respectively, each bound in one volume, will be electronically filed by Karen Nethercutt and Miriam Dutton promptly once a docket number is assigned to this appeal.

Motions to Extend the time for delivery of the contract transcription was filed on 16 November 2017, 22 January 2018, and on 15 February 2018; and, respective Orders were entered extending the time to produce the transcript to and including 19 March 2018.

## PROPOSED ISSUES ON APPEAL

Pursuant to Rules 10 [and 7(a)(1)], Plaintiffs-Appellants intend to present the following proposed issues on appeal:

1. Did the trial court err in denying Plaintiffs' motion for default judgment?

2. Did the trial court err in granting Defendants' motion to set aside Plaintiffs' default and for sanctions?

3. Did the trial court err in dismissing Plaintiffs' complaint for failure to comply with Rule 9J of the N.C. Rules of Civil Procedure?

4. Did the trial court err in denying Plaintiffs' motion to amend their complaint?

5. Did the trial court err in denying Plaintiffs' motion for relief under Rules 59 and 60 of the N.C. Rules of Civil Procedure?

6. Did the trial court err in dismissing Plaintiffs' complaint with prejudice?

## STIPULATIONS OF COUNSEL

Counsel for the Appellants and Appellees stipulate as follows:

1.      All captions, signatures, headings of papers, certificates of service and documents filed with the trial court that are not necessary for the understanding of the appeal may be omitted from the record, except as required by Rule 9 of the Rules of Appellate Procedure.

2.      The parties have undergone a reasonable search for duplicative or substantially similar document in the record and in the Rule 9(d)(2) documentary exhibits. For voluminous duplicates, a slip sheet has been inserted into the record or into the Rule 9(d)(2) documentary exhibits indicating where in the record the exhibit is set forth in its entirety.

3.      The Defendants-Appellees contend that issues regarding default judgment were mooted by plaintiff's filing of an amended complaint and by statements made by Plaintiff's counsel on the record that same day.

4.      Defendant-Appellee Neil Kurtz, M.D. raised objection to personal jurisdiction in his trial court motion to dismiss. Because the trial court dismissed the action on Rule 9(j) grounds, the personal jurisdictional issue has not yet been addressed. Dr. Kurtz continues to assert his personal jurisdiction defense.

5.      The parties stipulate that the following documents constitute the agreed-upon record on appeal to be filed with the Clerk of the Court of Appeals:

   a.  The printed record on appeal, consisting of pages 1 to 233; and

   b.  The trial transcript described in the statement of the transcript option, (R p 228), (which will be submitted by the court reporters upon receipt of a docket number for the appeal).

This the 25th day of June 2018

For the Plaintiffs-Appellants _____

Richard E. Batts

For the Defendants-Appellees _____

Brian H. Alligood

## STATEMENT REGARDING SETTLEMENT OF THE RECORD ON APPEAL

Counsel for Appellants states as follows:

1. The proposed Record on Appeal was served upon Counsel for Appellee by 23 April 2018.

2. Defendants Appellees filed upon Counsel for Plaintiff Appellants Notice of Objections to Proposed Record on Appeal on 21 May 2018.

3. Counsel for Appellants' filed motion to extend time for settlement of the Record on Appeal which was granted on 1 June 2018 and the time for settlement of the Record on Appeal was extended to 29 June 2018.

4. By operation of the time limits within Rule 11(c), the record was deemed settled as of _____ June 2018; and, the following documents constitute the settled record on appeal to be filed with the Clerk of the Court of Appeal:

    a. This printed record on appeal consisting of pages 1 to 233.

    b. The designated verbatim transcripts of proceedings (to be electronically filed by the designated transcriptionists pursuant to Rule 7(b)(2)); and

    c. Motions file with and Orders issued by the Court of Appeals.

## IDENTIFICATION OF COUNSEL FOR THE APPEAL

FOR THE APPELLANTS:                    RICHARD E. BATTS, PLLC

                                        RICHARD E. BATTS
                                        1330 BENVENUE ROAD
                                        ROCKY MOUNT, NC 27804
                                        TELEPHONE: 252-210-3421
                                        FACSIMILE: 252-565-0040
                                        STATE BAR NO:9562
                                        rbatts@attorneyrichardbatts.com

FOR THE APPELLEES:                     BOVIS, KYLE, BURCH & MEDLIN

                                        BRIAN H. ALLIGOOD
                                        800 GREEN VALLEY ROAD
                                        Suite 102
                                        GREENSBORO, NC 27408
                                        TELEPHONE:336-907-3265
                                        FACSIMILE:336-907-4178
                                        STATE BAR NO: 27361
                                        balligood@boviskyle.com

## CERTIFICATE OF SERVICE OF RECORD ON APPEAL

I the undersigned attorney for the plaintiff-appellants certify that on the date set out below, I served a copy of the Record on Appeal upon Brian J. Alligood, attorney of record for the defendant-appellant, by depositing a copy in a postpaid, properly addressed wrapper into a Post Office of official depository under the exclusive care and custody of the United States Postal Service, addressed to him:

> Brian J. Alligood,
> Bovis, Kyle, Burch & Medlin,
> 800 Green Valley Road, Suite 102,
> Greensboro, NC 27408.
> Attorney for Appellees

This the 28TH day of June 2018

RICHARD E. BATTS, PLLC

BY: _____

Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: 252.210.3421
Facsimile: 252.565.0040
Email:rbatts@attorneyrichardbatts.com
N.C. State Bar# 9562
Attorney Appellants

An unpublished opinion of the North Carolina Court of Appeals does not constitute
controlling legal authority. Citation is disfavored, but may be permitted in accordance with
the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

## IN THE COURT OF APPEALS OF NORTH CAROLINA

## No. COA18-706

### Filed: 19 February 2019

Pitt County, No. 16 CvS 2712

RENE ROBINSON, Individually, and as ADMINISTRATRIX of the ESTATE OF
VELVET FOOTE, Plaintiffs,

v.

GGNSC HOLDINGS, LLC d/b/a Golden Living Center, a/k/a Sava Senior Care, LLC
d/b/a McGregor Downs Health and Rehabilitation Center, and NEIL KURTZ,
Defendants.

Appeal by Plaintiffs from orders entered 20 April 2017, 28 June 2017, and 2

October 2017 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the

Court of Appeals 16 January 2019.

*Richard E. Batts, PLLC, by Richard E. Batts, for the Plaintiffs-Appellants.*

*Bovis Kyle Burch & Medlin, by Brian H. Alligood, for the Defendants-Appellees.*

DILLON, Judge.

Plaintiff Rene Robinson appeals from the trial court's order dismissing her

claims against Defendant GGNSC Holdings, LLC, for the wrongful death of her

mother, Velvet Foote. After careful review, we affirm.

### I. Background

Plaintiff commenced this action for wrongful death on behalf of the estate of her mother, Velvet Foote. On 13 November 2014, Ms. Foote was admitted to Golden Living Center, a nursing home owned and operated by Defendant in Greenville. Nine days later, while residing at Golden Living Center, Ms. Foote consumed part of a bottle of body wash and suffered injuries as a result. In January 2015, about two months after the incident, Ms. Foote passed away.

In November 2016, Plaintiff filed the present action alleging that Ms. Foote's death was a result of her injuries from consuming the body wash. Defendant filed and served a motion for extension of time to answer Plaintiff's complaint. The trial court granted the motion and extended Defendant's time to serve a responsive pleading until 7 March 2017.

On 3 March 2017, Defendant *served* Plaintiff with a motion to dismiss her complaint and *filed* this motion on 9 March 2017.

But three weeks later, on 29 March 2017, Plaintiff filed a motion for entry of default against Defendant, alleging that Defendant had not "filed any Answer or motion for extension of time." The clerk signed and entered default on that same day. The next week, on 6 April 2017, Plaintiff moved for default judgment and made a calendar request setting the hearing on the matter for 17 April 2017. Though Plaintiff's certificate of service purports that she served notice of the default judgment hearing on April 6, she waited until April 10 to send notice to Defendant.

- 2 -

On 17 April 2017, before the default judgment hearing, Defendant filed a motion to set aside default and for sanctions against Plaintiff, based on Plaintiff's misrepresentations to the court. After a hearing on the matter, the trial court set aside the entry of default and entered monetary sanctions against Plaintiff.

Subsequently, the trial court heard arguments on Defendant's motion to dismiss, in which Defendant argued primarily that Plaintiff had failed to properly plead a medical malpractice claim in accordance with Rule 9(j) of the North Carolina Rules of Civil Procedure. Prior to the hearing and on the same day, Plaintiff filed an amended complaint. The trial court found that, despite Plaintiff's amendments, her complaint still alleged claims for medical malpractice and failed to satisfy Rule 9(j), and therefore granted Defendant's motion to dismiss.

Plaintiff filed a motion for relief from the trial court's order dismissing her complaint under Rules 59 and 60. After a hearing on the matter, the trial court denied the motion.

Plaintiff timely appealed.

## II. Analysis

Plaintiff brings, essentially, two arguments on appeal. First, she contends that the trial court erred in setting aside entry of default against Defendant. Second, she argues that the trial court should not have dismissed her amended complaint,

- 3 -

contending that it established a cause of action for ordinary negligence, not medical malpractice. We address each argument in turn.

### A. Entry of Default

Plaintiff first argues that it was error for the trial court to set aside entry of default against Defendant and that the court should have entered a default judgment. We note that prior to the start of the hearing on Plaintiff's motion for default judgment and Defendant's motion to set aside default, Plaintiff filed an amended complaint, though without leave of court.

When a party fails to respond to an action against it in a timely manner, the clerk may enter default against it. N.C. R. Civ. P. 55(a). Then, if that party continues to fail to respond and damages are certainly computable, a final default judgment may be entered against it on the moving party's claims. N.C. R. Civ. P. 55(b).

According to Rule 12(a)(1) of the North Carolina Rules of Civil Procedure, a party normally has thirty (30) days from the service of a complaint against it to timely *serve* it's answer. N.C. R. Civ. P. 12(a)(1). However, service of a Rule 12 motion, such as a 12(b)(6) motion to dismiss, tolls the clock and extends the time allowed for the *service* of a responsive pleading until twenty (20) days after the trial court resolves the Rule 12 motion. N.C. R. Civ. P. 12(a)(1)(a).

In her motion for entry of default, Plaintiff represented that Defendant had not filed an answer or a responsive pleading of any kind in this case. Pursuant to a

- 4 -

time extension, Defendant had until 7 March 2017 to respond to Plaintiff's original complaint. Though Defendant's Rule 12(b)(6) motion was not filed with the court until 9 March 2017, the record shows that Defendant served the motion on 3 March 2017, four days before its time to respond expired. And we note that "Rule 12(a)(1) require[d] only that [D]efendant *[s]erve* his [response] within thirty days." *Quaker Furniture House, Inc. v. Ball*, 31 N.C. App. 140, 141, 228 S.E.2d 475, 476 (1976) (emphasis added).

Defendant's motion to dismiss tolled the responsive period for service of its Answer until twenty (20) days from the resolution of the motion to dismiss. Plaintiff filed her motion for entry of default on 29 March 2017, before a hearing on Defendant's motion to dismiss had been scheduled. The evidence supports the trial court's conclusion that Defendant made timely service of its motion to dismiss, which then tolled Defendant's time to respond until after the motion had been properly reviewed. Therefore, we conclude that the trial court did not err in setting aside entry of default and denying entry of default judgment.[1]

---

[1] We recognize Plaintiff's contention that Defendant's motion to set aside entry of default was not timely filed under Rule 5(a1) of our Rules of Civil Procedure. However, Rule 5(a1) governs service of briefs and memorandums supporting motions, not the motions themselves. N.C. R. Civ. P. 5(a1). Even if it applied, Rule (5)(a1) allows the court to take "action as the ends of justice require." N.C. R. Civ. P. 5(a)(1). Here, where entry of default was clearly incorrect, we are inclined to say that hearing Defendant's motion properly served the interest of justice.

Likewise, we conclude that the trial court did not err in ordering sanctions against Plaintiff. There was evidence before the trial court which showed that Plaintiff deliberately filed a motion for entry of default that was clearly without merit. The evidence showed that she then waited until April 10 to serve Defendant with notice of the April 17 hearing on the matter, though she submitted that service had occurred on April 6. The evidence supports the trial court's findings that there was "no good faith basis upon which to seek an entry of default" and Plaintiff made "multiple misrepresentations" to the court in her filings. We conclude that the trial court did not exceed its authority in deciding to sanction Plaintiff.

## B. Pleadings Under Rule 9(j)

Plaintiff next challenges the trial court's grant of Defendant's Rule 12(b)(6) motion to dismiss her wrongful death claim. Specifically, Plaintiff argues that the trial court erred in holding that her claim qualified as a suit for medical malpractice, rather than ordinary negligence. "On appeal from an order dismissing a claim pursuant to Rule 12(b)(6), we conduct de novo review." *Silver v. Halifax Cty. Bd. of Commissioners*, ___ N.C. ___, ___, 821 S.E.2d 755, 759 (2018).

A claim is for medical malpractice if it seeks "damages for personal injury or death arising out of the furnishing or failure to furnish *professional services* in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2013) (emphasis added). The term "professional services" in

- 6 -

this context refers to an act or service "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Smith v. Keator*, 21 N.C. App. 102, 105-06, 203 S.E.2d 411, 415, *aff'd,* 285 N.C. 530, 206 S.E.2d 203 (1974). Claims alleging injury as a result of clinical judgment and skill sound in medical malpractice, while claims alleging injury in a medical setting but not involving medical assessment are for ordinary negligence. *Gause v. New Hanover Reg'l Med. Ctr.*, ___ N.C. App. ___, ___, 795 S.E.2d 411, 415 (2016).

Plaintiff contends that her claim is one for simple negligence, because Defendant's failure to adequately monitor and supervise Ms. Foote to ensure that she did not consume body wash did not involve the use of special knowledge or training. Rather, Plaintiff contends, Defendant's failure to supervise Ms. Foote was an act that did not require any particular clinical judgment or intellectual skill, did not qualify as professional services, and amounted to ordinary negligence. *See Taylor v. Vencor, Inc.*, 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (2000) (holding plaintiff's claim was for ordinary negligence where nursing home failed to supervise patient smoking cigarettes). Plaintiff asserts that the facts here are similar to those in *Taylor*, as Ms. Foote's injuries resulted from Defendant's failure to supervise Ms. Foote while knowing that she may injure herself.

- 7 -

However, in construing whether a party's claim requires a Rule 9(j) certification, we look to the language of the complaint. *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002) ("[T]he pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim."); *see also Davis v. Rigsby,* 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964) ("A party is bound by his pleadings and . . . the allegations contained in all pleadings ordinarily are conclusive as against the pleader.").

Plaintiff's Amended Complaint alleges that Defendant, among other things:

> 23. (a). . . . failed to possess that degree of knowledge, training and experience ordinarily possessed by others practicing the specialty of geriatric medicine in [similar communities];
> (b) failed to apply that degree of knowledge, training and experience to the care of [Ms. Foote];
> . . .
> (e) failed to properly and timely interpret the information related to them . . .;
> (f) failed to timely discover and disclose the cause of Ms. Foote's nausea, vomiting, and diarrhea[;]
> . . .
> (h) failed to timely and appropriately interpret the results of [the] diagnostic studies performed;
> . . .
> (j) failed to arrive at a timely and proper diagnosis consistent with [Ms. Foote's] signs, symptoms and clinical findings;
> . . .
> (r) failed to timely and appropriately determine the need for surgery;
> . . .
> (t) failed to timely and appropriately diagnose and treat rectal bleeding;

- 8 -

. . .

(v) failed to use their best judgment in the care of treatment of [Ms. Foote];

(w) failed to provide care in accordance with the standard of practice among members of the same health care profession with similar training and experience situated in same or similar communities in 2014 . . . .

. . . .

Even a cursory reading of these allegations shows that each of these contentions contemplates the use of specific knowledge or skill in assessing and subsequently addressing Ms. Foote's condition. Plaintiff alleges much more than mere failure to supervise Ms. Foote. Specifically, Plaintiff's amended complaint alleges a failure to interpret symptoms, discover medical causes, and then diagnose and treat Ms. Foote—far more than a simple failure to supervise. Diagnosis and medical treatment require the application of intellectual skill, knowledge, and training, and clearly indicate a claim for medical malpractice. The trial court did not err in dismissing Plaintiff's complaint for lack of a Rule 9(j) certification.

Plaintiff also assigns error to the trial court's refusal to dismiss her complaint without prejudice. We review the trial court's decision to dismiss with or without prejudice only for an abuse of discretion, *Whedon v. Whedon*, 313 N.C. 200, 213, 328 S.E.2d 437, 445 (1985), and we find no abuse of discretion here. Plaintiff had the time and opportunity to either properly amend her complaint to conform to Rule 9(j)'s requirements, or to seek a voluntary dismissal pursuant to Rule 41(a)(1). Instead, Plaintiff chose to make inappropriate attempts to enter default against Defendant,

- 9 -

and amend her complaint to avoid the need for a Rule 9(j) certification. We cannot say that the court was without reason in dismissing her complaint with prejudice.

## C. Motion for Relief from Order

Lastly, Plaintiff contends that the trial court committed error in denying her motion for relief from order under Rules 59 and 60. We review these motions for an abuse of discretion. *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006).

To succeed under Rules 59 and 60, Plaintiff must at least show extraordinary circumstances for which justice demands that relief be granted. *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987). In support of her motion, Plaintiff advanced the same arguments presented earlier in this case: that her complaint was rightfully one for ordinary negligence, not medical malpractice. Because we hold that Plaintiff's complaint alleges a claim for medical malpractice, we conclude that the trial court did not abuse its discretion in denying Plaintiff's motion for relief on the same grounds.

At the hearing on her Rule 59 and 60 motions for relief from order, Plaintiff also requested leave to amend her complaint again.[2] Plaintiff stated at the hearing that an expert had been retained and had already reviewed the case prior to the

---

[2] Typically, "once the trial court enters its dismissal under Rule 12(b)(6), plaintiff's right to amend under Rule 15(a) is terminated." *Johnson v. Bollinger*, 86 N.C. App. 1, 7, 356 S.E.2d 378, 382 (1987). But, pursuant to a Rule 59 or 60 motion for relief, a plaintiff may request to reopen the judgment and amend her complaint. *Id.*

submission of her original complaint. However, during the hearing on entry of default, Plaintiff admitted that an expert had not yet been retained to review her case for 9(j) certification. If an expert had been retained from the beginning, Plaintiff had every opportunity to properly certify her case in her first amendment. In light of the record, we conclude that the court did not abuse its discretion in denying Plaintiff a second opportunity to amend. *Thigpen v. Ngo*, 355 N.C. 198, 204, 558 S.E.2d 162, 166 (2002) ("[P]ermitting amendment of a complaint to add the expert certification where the expert review occurred after the suit was filed would conflict directly with the clear intent of the legislature."). Rule 9(j) requires a complaint to be dismissed, not "dismissed or amended." *Brown v. Kindred Nursing Cntrs. E., L.L.C.*, 364 N.C. 76, 82, 692 S.E.2d 87, 91 (2010).

### III. Conclusion

We hold that the trial court did not err in setting aside entry of default against Defendant and entering sanctions against Plaintiff. Further, we conclude that the trial court properly dismissed Plaintiff's claim for wrongful death for failure to include a Rule 9(j) certification. Her complaint, even after amendment, alleged a failure to employ the intellectual skill, knowledge, and training expected of a medical professional beyond that considered ordinary negligence.

AFFIRMED.

Judges ZACHARY and ARROWOOD concur.

- 11 -

Report per Rule 30(e).

No.                                                    THIRD DISTRICT

## SUPREME COURT OF NORTH CAROLINA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RENE ROBINSON, individually, and as        )
ADMINISTRATRIX of the                       )
ADMINISTRATRIX of the ESTATE OF             )
VELVET FOOTE,                               )
                Plaintiffs,                 )
                                            )
                                            )          From Pitt County
v.                                          )          **No. COA 18-706**
                                            )
GGNSC HOLDINGS, LLC dba GOLDEN              )
LIVING CENTER, AKA, SAVA SENIOR            )
CARE, LLC, dba MCGREGOR DOWNS              )
HEALTH and REHABILITATION                   )
CENTER, NEIL KURTZ                          )
                Defendants                  )


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PETITION FOR DISCRETIONARY REVIEW
## UNDER G.S. 7A-31

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **INDEX**

TABLE OF CASES AND AUTHORITIES....................................... iii

FACTS..............................................................................................1

REASONS WHY CERTIFICATION SHOULD BE USED .............4

ISSUES TO BE BRIEFED................................................................19

CERTIFICATE OF SERVICE ........................................................21

# TABLE OF CASES AND AUTHORITIES

**Cases**

*Alston v. Granville Health Sys.*, 221 N.C. App. 416, 421, 727 S.E.2d
877, 881 (2012) ............................................- 5 -, - 7 -, - 13 -, - 14 -

*Brisson v. Santarielo*, 351 N.C. 589, 528 S.E.2d 568 (2000)......- 2 -

*Estate of Waters v. Jarman*, 144 N.C. App. 98, 547 S.E.2d 142
(N.C. App., 2001) .................................................................- 10 -

*Gause v. New Hanover Reg'l Med. Ctr.* (N.C. App., 2016)- 5 -, - 6 -
......................................................................., - 7 -, - 10 -, - 13 -, - 14 -

*Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987)......- 16 -

*Horsley v. Halifax Reg'l Med. Ctr., Inc.*, 220 N.C. App. at 412, 725
S.E.2d at 421.................................................................. - 5 -, - 6 -

*Lewis v. Setty*, 130 N.C. App. at 607, 503 S.E.2d at 673 ............- 5 -

*Locklear v. Cummings*, 817 S.E.2d 571 (N.C., 2018)- 5 -, - 7 -, - 8 -,
......................................................................- 12 -, - 13 -, - 15 -

*Norris v. Rowan Mem'l Hosp., Inc.*, 21 N.C. App. 623, 623, 205
S.E.2d 345, 346 (1974) ...........................................................- 5 -

*Robinson v. GGNSC Holdings, LLC* (N.C. App., 2019) .... - 5 -, - 8 -

*Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C.App. 624, 628, 652
S.E.2d 302, 305 (2007) ...........................................................- 6 -

*Taylor v. Vencor*, 136 N.C.App. 528, 525 S.E.2d 201, disc. review
denied, 351 N.C. 646, 543 S.E.2d 884 (2000)..........................- 5 -

**Rules**

*N.C.G.S. §1A-1, Rule 12(b)(6)*.....................................................- 16 -

No.                                          THIRD DISTRICT

## SUPREME COURT OF NORTH CAROLINA
*************************************

| | | |
|---|---|---|
| RENE ROBINSON, individually, and as | ) | |
| ADMINISTRATRIX of the | ) | |
| ADMINISTRATRIX of the ESTATE OF | ) | |
| VELVET FOOTE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | <u>From Pitt County</u> |
| v. | ) | **No. COA 18-706** |
| | ) | |
| GGNSC HOLDINGS, LLC dba GOLDEN | ) | |
| LIVING CENTER, AKA, SAVA SENIOR | ) | |
| CARE, LLC, dba MCGREGOR DOWNS | ) | |
| HEALTH and REHABILITATION | ) | |
| CENTER, NEIL KURTZ | ) | |
| Defendants | ) | |

*********************************

## PETITION FOR DISCRETIONARY REVIEW
## UNDER G.S. 7A-31

*********************************

<u>TO THE HONORABLE SUPREME COURT OF NORTH CAROLINA</u>

Plaintiff-Petitioner Rene Robinson, Individually, and as Administratrix of

the Administratrix of the Estate of Velvet Foote (hereafter "Petitioner")

respectfully petition the Supreme Court of North Carolina for discretionary review

of the decision of the Court of Appeals in the above case. The Court of Appeals'

opinion is one of several such opinions addressing the significance of allegations in the complaint in determining whether the matter rests in ordinary negligence or in medical malpractice requiring 9(J) certification. The opinions have differed significantly without apparent justification in the opinions. As the Supreme Court did with the varying opinions addressing the revival of deficient 9(J) certifications in complaints with a voluntary dismissal and refiling with the proper 9(J) certification as the Supreme Court did in *Brisson v. Santarielo*, 351 N.C. 589, 528 S.E.2d 568 (2000), the Supreme Court should more completely address the criteria to be used in determining what in addition to the allegations in the complaint should be considered in determining whether the claim is ordinary negligence or medical malpractice.

## I.
## FACTS

The complaint alleges that Plaintiff Rene Robinson is the daughter of Velvet Foote, deceased, whom prior to her death, was Ms. Foote's primary caregiver, and was appointed to serve as the Administratrix of her Estate; Ms. Foote having died on 15 January 2015. (R p 4). Two months prior to her death, Ms. Foote was admitted to Defendant GGNSC Holdings, LLC dba Golden Living in Greenville, North Carolina, 13 November 2014. (R p 4). She was admitted for one week of physical therapy before being released to return home with her daughter. She presented at the time of her admission as an advanced Alzheimer Patient with an

unsteady gait and a propensity to eat most anything in her reach: including but not limited to toilet paper, coins, sticks of butter, etc. (R p 4)

As recorded in her admit note, Velvet Foote was alert and responsive despite having the following diagnosis: Anxiety disorder, depressive disorder, atrial fibrillation, and catatonic schizophrenia; she was on a soft diet with honey thickened liquids. (R p 5). She tolerated meds crushed. She was fed with a spoon by staff and had a good appetite.

The nursing notes, as sparse as they are, noted nothing significant between November 14 and November 17, 2014 when staff reported observing Ms. Foote eating butter off of dining tables, confirming her propensity to ingest any and everything she could lay her hands on. (R p 6). On 18 November 2014, Ms. Foote was observed watching a comedy on TV and responded readily to Terry Edwards in Recreation Services. On 20 November 2014, staff's efforts at interaction were less than remarkable. Ms. Foote answered questions in the early interview by deflection but eventually answered appropriately as to her name. Throughout this time, Ms. Foote continued on a pureed diet with nectar fluid; she continued to eat well. (R p 6).

On the day of 22 November 2014, without further explanation, facility records indicate that Ms. Foote did not eat breakfast nor lunch. (R p 6). However, around dinner, a nursing assistant (NA) entered Ms. Foote's room with

towels, a basin, and a bottle of body wash containing an image of fruit on the label. Upon information and belief, to be borne out in discovery, the LPN exited the room before washing Ms. Foote, leaving behind the bottle of body wash within Ms. Foote's reach. (R pp 6-7)

At 18:41 on 22 November 2014, LPN S. Gay recorded that help was summoned into Ms. Foote's room because she had been found with severe nausea, vomiting, and diarrhea, had aspirated, and stopped breathing. (R p 7). Defendant heard Nurse EMS and Ms. Foote was transferred to Vidant Trauma Medical Center where she was diagnosed with asphyxiated pneumonia and sepsis, an infection from which she died on 15 January 2015 in the Halifax Regional Medical Center.

## II.
## REASONS WHY CERTIFICATION SHOULD ISSUE

As set out in N.C. Gen. Stat. §7A-31, the discretionary review of a decision of the Court of Appeals by this Court is appropriate where the appeal presents questions of significant public interest, or where the issue presented involves legal principles of major significance to the jurisprudence of the state. Plaintiff believes her case meets both criteria. Plaintiff believes the Supreme Court should harmonize prior ordinary negligence claims challenged as medical malpractice requiring 9(J) certification. The often cited series of cases filed as ordinary negligence cases that were successful, as such before our Courts include *Taylor v. Vencor*, 136 N.C.App.

528, 525 S.E.2d 201, disc. review denied, 351 N.C. 646, 543 S.E.2d 884 (2000), *Norris v. Rowan Mem'l Hosp., Inc.,* 21 N.C. App. 623, 623, 205 S.E.2d 345, 346 (1974), *Lewis v. Setty,* 130 N.C. App. at 607, 503 S.E.2d at 673, *Horsley v. Halifax Reg'l Med. Ctr., Inc.,* 220 N.C. App. at 412, 725 S.E.2d at 421. As well, the often cited series of cases filed as ordinary negligence, challenged as medical malpractice and medical malpractice was determined to exist by our appellate courts include *Gause v. New Hanover Reg'l Med. Ctr.* (N.C. App., 2016), *Alston v. Granville Health Sys.,* 221 N.C. App. 416, 421, 727 S.E.2d 877, 881 (2012), *Locklear v. Cummings,* 817 S.E.2d 571 (N.C., 2018); and Plaintiff offers the case at bar, *Robinson v. GGNSC Holdings, LLC* (N.C. App., 2019) as being decided in a manner that is inconsistent with such series of respected cases.

The above cases where ordinary negligence was affirmed by our appellate courts, the persons involved may have been medical professionals, but the conduct complained of that caused the injury was determined not to be the rendering or failure to render professional services. In *Taylor v. Vencor,* the Court's holding was that the claim was not a medical malpractice action where the plaintiff sued a nursing home for failure to adequately supervise her elderly mother while she smoked cigarettes resulting in a fire and injury. In *Norris v. Rowan,* a 75-year-old patient fell from a hospital bed and fractured her hip after nurses failed to raise her bedrails in clear violation of a hospital rule. In *Lewis v. Setty,* the plaintiff, a

quadriplegic, fell and was injured while being transferred from an examination table to his wheelchair by the defendant doctor and the plaintiff's aide. In *Horsley v. Halifax Reg'l Med. Ctr., Inc.*, 220 N.C. App. at 412, 725 S.E.2d at 421, the plaintiff brought an action for gross negligence after falling from a standing position while admitted as a patient at the defendant hospital. Hospital nurses knew that the plaintiff required assistance to stand or walk without falling. *Id.* at 412, 725 S.E.2d at 420. Later that evening, the plaintiff was standing against the wall near the nurses' station and said aloud that she was going to fall; however, none of the nurses offered her a wheelchair, cane, or walker.

The above cases where ordinary negligence was rejected by our appellate courts, the persons involved were medical professionals rendering or failing to render professional services. "The term 'professional services' is not defined by our statutes but has been defined by the Court as 'an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.' " *Gause* , --- N.C.App. at ----, 795 S.E.2d at 415 (quoting *Sturgill v. Ashe Mem'l Hosp., Inc.* , 186 N.C.App. 624, 628, 652 S.E.2d 302, 305 (2007)) In *Gause v. New Hanover Reg'l Med. Ctr.*, the x-ray technician, whether or he inadequately assessed Plaintiff, Mrs. Gause, in choosing to take a standing x-ray, Mrs. Gause's injury arose from the delivery of medical services by a medical care

provider and was medical malpractice as defined by statute. In *Alston v. Granville Health Sys*, the decedent, Alston, was lying unconscious on a hospital operating table when she fell to the floor and was injured. Discovery, however, revealed that the decedent fell because medical personnel had failed to secure her in restraints. Id. at 420-21, 727 S.E.2d at 880. Affirming the trial court, this Court also held that the plaintiff's claim sounded in medical malpractice because "[t]he evidence presented by [the d]efendants in support of their summary judgment motions . . . shows that the decision to restrain a patient under anesthesia is one that requires use of specialized skill and knowledge and, therefore, is considered a professional service." In *Locklear v. Cummings*, while Plaintiff "was opened up and had surgical tools in her[,]" Plaintiff fell off of the surgical table and was injured. In rendering its decision for the Plaintiff, the Court of Appeals concluded that Plaintiff's factual allegation, namely "Plaintiff was allowed to fall off the operating table while Plaintiff was opened up and had surgical tools in her[,]" forecasts the type of injury resulting from actions not requiring specialized skill or clinical judgment. *Gause* , ---- N.C.App. at ----, 795 S.E.2d at 413 (citations omitted). In reversing the Court of Appeals, the Supreme Court, adopting the analysis of the decenter in the case, Judge Berger, looked at the allegations of the complaint. Plaintiff alleged that Defendant, while "acting in the course and scope of his employment," utilized his professional skill and judgment in operating on Plaintiff, and in doing so, failed to position

himself to properly control and monitor Plaintiff's body. The Court held that "the positioning and controlling of Plaintiff's body while on the operating table, during active surgery, while Plaintiff's opened body contained surgical tools, required "clinical judgment and intellectual skill." *Id*. Thus, because Plaintiff's factual allegations sound in medical malpractice, and her complaint specifically alleges medical malpractice, Plaintiff is required to comply with Rule 9(j)."

Plaintiff contends that with the above cited cases where ordinary negligence was found, the pendulum of Court of Appeals decisions swung to an extreme with the decision in *Locklear v. Cummings* which was corrected by the decision of the Supreme Court, in the appeal, which adopted the decent as the Court of Appeals Decision. Plaintiff represents to the Court that, possibly as a result of Cummings, the pendulum has swung to an extreme in the other direction that requires correction by the Supreme Court. That is prior to the Supreme Court's decision in Cummings, one could be very confident that the conduct described in the case at bar, *Robinson v. GGNSC Holdings, LLC* (N.C. App., 2019) would be considered ordinary negligence. The Supreme Court's decision in Cummings focus appears to be placed on the allegations of the complaint in deciding whether the complaint is one of ordinary negligence or medical malpractice requiring 9(J) certification. That is, the analysis appears to go much further beyond the misconduct being complained of to the allegations of the complaint and information obtained during

discovery. Plaintiff represents to the Court that her facts are more in line with the cases where ordinary negligence was determined than those cases determined to be medical malpractice and states the following in asserting that her case was wrongly decided as being one of medical malpractice.

Again, the decedent, Ms. Foote, was admitted to Defendant facility for physical therapy and expected to be there about a week. She was known to put anything in reach into her mouth and had to be watched for her safety. The day of the conduct complained of, Ms. Foote had not eaten all day. During the late afternoon, an employee of the facility entered Ms. Foote's room with items for washing, including a bottle of liquid soap, and left the room; leaving the items for washing and the bottle of liquid soap. When the facility employee returned to the room, she noticed Ms. Foote in extreme stress; EMS was called, and she was taken to the hospital where she was diagnosed with asphyxiated pneumonia and sepsis. Clearly, the conduct complained of is the leaving unattended in the presence of Ms. Foote a bottle of liquid soap; the injury resulting from her consuming the soap from the unattended bottle, becoming seriously ill with vomiting, diarrhea, and ceased breathing.

Plaintiff shows unto the Court that her case aligns more squarely with the cases where ordinary negligence was determined to carry the day than where

medical malpractice was determined to exist. In contrasting the case at bar to those concluding that the complaint was one of medical malpractice, one common theme appears to flow through each case. That is, in each medical malpractice case, there's a medical professional delivering medical services where such services are required, and such person is an active participant in the negligent conduct described the complaint. In *Gause v. New Hanover Reg'l Med. Ctr.*, the x-ray technician was a medical professional delivering medical x-ray services when the Plaintiff fell and injured herself. Unlike in Gause and the other medical malpractice decisions, the case at bar names a corporate entity, GGNSC, and an officer of the corporate entity, Neil Kurtz, as Defendants based upon the theory of respondent superior and various liability. A review of the case law involving corporate negligence claims asserted against a hospital reveals that there are fundamentally two kinds of claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital. The case law has treated the two types of claims differently. *Estate of Waters v. Jarman*, 144 N.C. App. 98, 547 S.E.2d 142 (N.C. App., 2001). Collectively, the Court said, "we believe these cases stand for the proposition that corporate negligence actions brought against a hospital, which pertain to clinical patient care, constitute medical malpractice actions; however, where the corporate negligence claim arises out of

policy, management or administrative decisions, such as granting or continuing hospital privileges, failing to monitor or oversee performance of the physicians, credentialing, and failing to follow hospital policies, the claim is instead derived from ordinary negligence principles. *Estate of Waters v. Jarman*, 144 N.C. App. 98, 547 S.E.2d 142 (N.C. App., 2001)." There were allegations in the complaint that identified misconduct of GGNSC that constitute ordinary negligence that do not require a 9(J) certification.

Unlike in *Gause*, the negligence complained of in the case at bar is not a bad decision of a health care provider in the delivery of professional services. The conduct complained of in the case at bar is the negligence of a person who appeared in her room to wash Ms. Foote, where such conduct did not require specialized knowledge of a trained professional in the delivery of healthcare. The labor being delivered is not professional but manual daily grooming activities. "Our courts have classified as medical malpractice those claims alleging injury resulting from activity that required clinical judgment and intellectual skill." *Id.* at ----, 795 S.E.2d at 415 (citation omitted). "Our courts have classified as ordinary negligence those claims alleging injury caused by acts and omissions in a medical setting that were primarily manual or physical and which did not involve a medical assessment or clinical judgment." *Id.* at ----, 795 S.E.2d at 415 (citation omitted).

In *Alston v. Granville Health Sys.*, the decedent, Mrs. Alston, was lying unconscious on a hospital operating table when she fell to the floor and was injured. The Court held that the evidence shows that the decision to restrain a patient under anesthesia is one that requires use of specialized skill and knowledge and, therefore, is considered a professional service." Unlike in Alston, in the case at bar, the conduct complained of was leaving a bottle of liquid soap within reach of a patient known to put anything in her mouth within reach. Ms. Foote was admitted as an Alzheimer patient that required special monitoring when in the presence of things that might be ingested. Observing this requirement did not require the skills of a medical professional and such was not the performance of medical services as are described in Court decisions.

In *Locklear v. Cummings*, the Court held that positioning and controlling of Plaintiff's body while on the operating table, during active surgery, while Plaintiff's opened body contained surgical tools, required "clinical judgment and intellectual skill." In the Locklear dissent, BERGER, Judge, adopted by the Supreme Court, perhaps more attention was given to the allegations of the complaint in deciding whether ordinary negligence or medical malpractice and the trial court in the case at bar adopted this approach in granting Defendants' Motion to Dismiss the complaint based upon the conclusion that the complaint contained allegations that indicated medical malpractice. But for the named allegations in the Judgment of

the Trial Court, there is every indication that the complaint would not have been dismissed as a medical malpractice action.

Plaintiff requests the Supreme Court consider that the weight given to the allegations of the complaint, that may be viewed as describing medical malpractice, should be properly balanced against the analysis given to the specific negligence complained of and the circumstances surrounding such negligence. There are many important distinctions that can be made between the above cited cases where the allegations in the complaint were given controlling weight and the case at bar. Unlike in all such cases, the case at bar named no medical professional as a defendant nor described the conduct resulting in the negligence complained of as delivery of professional services at the time of the injury. In *Gause v. New Hanover*, the medical professional delivering professional services at the time of the injury was an X-Ray Technician who was in the process of getting the Plaintiff in place for the x-ray. In *Alston v. Granville Health Sys*, the process for restraint required review and conduct of a medical professional in ordering such restraint. In *Locklear v. Cummings*, the medical professional, the surgeon, was in the process of performing a surgical procedure when Plaintiff fell from the operating table and was injured. In the case at bar, the alleged negligence that is the basis of the complaint, is from a hospital employee who appeared in Ms. Foote's room to wash her. Not only was the

alleged negligent person not a medical professional, she was not performing a medical procedure.

Regarding the review of allegations in the complaint of the above cases, using same to further support conclusions that the conduct complained of involved the delivery of professional medical services, Plaintiff would request the Supreme Court consider the context in which such complaint allegations were considered. In *Gause v. New Hanover*, The Court stated "First, Plaintiffs' discovery responses reveal allegations that Defendant was negligent in furnishing or failing to furnish professional services. Second, undisputed evidence produced in discovery shows that Mrs. Gause's injury stemmed from the x-ray technician's activities which required her to use clinical judgment. These allegations, the Court said, general as they are, sound in medical malpractice, because deciding what precautions and measures were "adequate" and "necessary" required medical personnel to use clinical judgment and intellectual skill. The Court said further "But our holding turns on more than the Complaint."

In *Alston v. Granville Health Sys.*, the decedent's estate sued the hospital and surgeon on a theory of *res ipsa loquitur*, alleging that it was unknown how the decedent fell and that the injury would not have occurred in the absence of negligence. *Id.* at 419, 727 S.E.2d at 879. Discovery, however, revealed that the decedent fell because medical personnel had failed to secure her in restraints. *Id.* at

420-21, 727 S.E.2d at 880. Affirming the trial court, this Court held that the Plaintiff could not state a claim for *res ipsa loquitur* because the cause of the decedent's fall was no longer unknown. *Id.* at 420-21, 727 S.E.2d at 880. This Court also held that "the plaintiff's claim sounded in medical malpractice because "[t]he evidence presented by [the d]efendants in support of their summary judgment motions . . . shows that the decision to restrain a patient under anesthesia is one that requires use of specialized skill and knowledge and, therefore, is considered a professional service." *Id.* at 421, 727 S.E.2d at 881." The question is whether the actions leading to the fall require specialized skill or clinical judgment. *Gause* , --- N.C.App. at ----, 795 S.E.2d at 415 (citations omitted).

Finally, in *Locklear v. Cummings*, Plaintiff, throughout her complaint, asserted that Dr. Cummings, Southeastern, Duke University Health System, and Duke University Affiliated Physicians, Inc. had provided professional medical services to Plaintiff. She further alleged that Dr. Cummings, while "acting in the course and scope of his employment," utilized his professional skill and judgment in operating on Plaintiff, and in doing so, failed to position himself to properly control and monitor Plaintiff's body. Plaintiff further asserted that Dr. Cummings failed to properly supervise other health care professionals during the operation. Still referring to information outside of the complaint, the Court said "Plaintiff's brief acknowledges that her complaint was one for medical malpractice. In her

Statement of the Case, Plaintiff states, "Marjorie Locklear ("Plaintiff" or "Locklear")
commenced this *medical malpractice action* on 30 July 2015." (emphasis added).
Plaintiff's brief also focuses on Rule 9(j) certification, which is only applicable to
medical malpractice claims."

In contrast to the above cases where medical malpractice was determined
based upon credible evidence from discovery production, depositions, and evidence
provided by defendants were considered important, in addition to the bare
allegations of the complaint, the trial court's judgment and that of the Court of
Appeals, in the case at bar, rest exclusively on the allegations in the complaint that
they conclude are generally associated with medical malpractice. Unlike in
Locklear, Plaintiffs' motions filed with and argued before the trial court provided
sound arguments supported by a series of cases that demonstrate that its claim is
for ordinary negligence and requires no 9(J) certification.

When considering a *N.C.G.S. §1A-1, Rule 12(b)(6)* Motion to Dismiss, the trial
court need only look to the face of the complaint to determine whether it reveals
an insurmountable bar to Plaintiffs' recovery. The test on a Motion to Dismiss for
failure to state a claim upon which relief can be granted is whether the pleadings,
when taken as true, are legally sufficient to satisfy the elements of at least some
legally recognized claim. *Harris v. NCNB*, 85 N.C. App. 669, 355 S.E.2d 838 (1987).
Plaintiff believes the complaint of her case and case law support a claim for which

relief can be granted, which is legally sufficient to support such claim and satisfies the elements of a legally recognized claim.

Regarding the decision of the Court of Appeals to affirm the decision of the trial court in dismissing her claim for default judgment, Plaintiffs request a review of what might be characterized as evidence needed to support a decision of misrepresentation. That is the decision of the Court of Appeals to affirm the trial courts dismissal of her motion for default, without a hearing of the motions rests upon two statements made by the defense in their motion to dismiss the action. One statement is that the request for default by the Clerk was based upon a false representation and clearly without merit. The second statement supports the claim of the defense that Plaintiff filed her motion for default judgment and notice of hearing on 6 April 2017, which was the date of the certificate of service on the filed document, and intentionally delayed notifying him in bad faith until 10 April 2017 for the scheduled 17 April 2017 hearing. Such statements are supported by merely statements of evidence, without any showing of such evidence and include the following:

> There was evidence before the trial court which showed that Plaintiff deliberately filed a motion for entry of default that was clearly without merit.

> The evidence showed that she then waited until April 10 to serve Defendant with notice of the April 17 hearing on the matter, though she submitted that service had occurred on April 6.

The evidence supports the trial court's findings that there was "no good faith basis upon which to seek an entry of default" and Plaintiff made "multiple misrepresentations" to the court in her filings.

To be clear, no affidavit, no response to an interrogatory, no transcript of or any sworn testimony was offered as evidence, nor anything generally accepted as evidence. What was offered were the Defenses' Motion and unsworn statements made by counsel for the defense. Such, Plaintiff contends, is not evidence and should not be considered by the Court of Appeals as evidence in determining bad faith and misconduct on her part and rendering its decision accordingly.

The only evidence available to the trial court was the date on which certain pleadings in the record on appeal were filed with the Clerk. Relevant to the issue being discussed are the following:

1. 22 NOV 2016, Complaint was filed;

2. 3 FEB 2017, Motion and Order extending time to answer to 7 MAR 2017;

3. 9 MAR 2017, GGNSC's Motion to Dismiss, N.C.R. Civ. P. 9(J), 12(b)(6);

4. 29 MAR 2017, Motion for Entry of Default;

5. 29 MAR 2017, Entry of Default by Clerk;

6. 6 APR 2017, Motion for Entry of Default Judgment; and,

7. 17 APR 2017, Defendants' Motion to Set Aside Default and Sanctions.

There is no affidavit in the file indicating that any filing with the trial court was actually served on the other party, much less when such document may have been served, notwithstanding the certificates of service of the filed documents. No credible evidence was provided to the trial court, or identified by the trial court in its judgment, upon which it concluded that Plaintiffs' Motion for Entry of Default Judgment was submitted in bad faith or that misconduct should be attributed to her in delaying service of notice of hearing until seven days prior to the scheduled hearing date. Therefore, the decision of the Court of Appeals should be reversed and the costs sanctioned against her should be ordered returned to her; and she should be allowed to argue her motion for Default Judgment before the trial court.

## III.

## ISSUES TO BE BRIEFED

In the event the Court allows this petition for Discretionary Review, petitioner intends to present the following issues in their brief for review:

1. Whether it is proper for the Court to dismiss a complaint under Rule 12(b)(6) based exclusively upon the allegations of a legally sufficient complaint;

2. Whether it is proper for the Court to dismiss a complaint under Rule 12(b)(6) without credible evidence from admissions, affidavits, discovery, depositions or other recognized sources;

3. Whether challenges to complaints for failure to comply with 9(J) certifications should appropriately be considered under the procedures of Rule 56 of the N.C. Rules of Civil Procedure; and,

4. Whether is proper for the Court to strike a Motion for Default Judgment and order sanctions without credible evidence of alleged filing deficiencies.

Respectfully submitted, this the 25th day of March 2019.

Richard E. Batts, Esq.
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
rbatts@attorneyrichardbatts.com
Attorney for the Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the forgoing PETITION FOR DISCRETIONARY REVIEW UNDER G.S. 7A-31 by Facsimile, 336.907.4178, and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail at Rocky Mount, North Carolina, addressed to the following person at the following address which is the last address know to me:

> Brian H. Alligood
> BOVIS KYLE BURCH & MEDLIN
> 800 Green Valley Rd, Suite 102
> Greensboro, North Carolina 27804
> Telephone: (336) 907.3265
> Facsimile: (336) 907.4178
> BAlligood@boviskyle.com
> Attorneys for Defendant-Appellees

This the 25th day of March 2019.

BY: _____
Richard E. Batts
RICHARD E. BATTS, PLLC
1330 Benvenue Road
Rocky Mount, NC 27804-1803
Telephone: (252) 210-3421
Facsimile: (252) 565-0040
N.C. State Bar# 9562
Attorney for the Plaintiffs

**RENE ROBINSON, Individually, and as
ADMINISTRATRIX
of the ESTATE OF VELVET FOOTE,
Plaintiffs,
v.
GGNSC HOLDINGS, LLC d/b/a Golden
Living Center,
a/k/a Sava Senior Care, LLC d/b/a
McGregor Downs Health and
Rehabilitation Center, and NEIL
KURTZ, Defendants.**

### No. COA18-706

### COURT OF APPEALS OF NORTH
### CAROLINA

### February 19, 2019

An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

Pitt County, No. 16 CvS 2712

Appeal by Plaintiffs from orders entered 20 April 2017, 28 June 2017, and 2 October 2017 by Judge Jeffery B. Foster in Pitt County Superior Court. Heard in the Court of Appeals 16 January 2019.

*Richard E. Batts, PLLC, by Richard E. Batts, for the Plaintiffs-Appellants.*

*Bovis Kyle Burch & Medlin, by Brian H. Alligood, for the Defendants-Appellees.*

DILLON, Judge.

Plaintiff Rene Robinson appeals from the trial court's order dismissing her claims against Defendant GGNSC Holdings, LLC, for the wrongful death of her mother, Velvet Foote. After careful review, we affirm.

I. Background

Page 2

Plaintiff commenced this action for wrongful death on behalf of the estate of her mother, Velvet Foote. On 13 November 2014, Ms. Foote was admitted to Golden Living Center, a nursing home owned and operated by Defendant in Greenville. Nine days later, while residing at Golden Living Center, Ms. Foote consumed part of a bottle of body wash and suffered injuries as a result. In January 2015, about two months after the incident, Ms. Foote passed away.

In November 2016, Plaintiff filed the present action alleging that Ms. Foote's death was a result of her injuries from consuming the body wash. Defendant filed and served a motion for extension of time to answer Plaintiff's complaint. The trial court granted the motion and extended Defendant's time to serve a responsive pleading until 7 March 2017.

On 3 March 2017, Defendant *served* Plaintiff with a motion to dismiss her complaint and *filed* this motion on 9 March 2017.

But three weeks later, on 29 March 2017, Plaintiff filed a motion for entry of default against Defendant, alleging that Defendant had not "filed any Answer or motion for extension of time." The clerk signed and entered default on that same day. The next week, on 6 April 2017, Plaintiff moved for default judgment and made a calendar request setting the hearing on the matter for 17 April 2017. Though Plaintiff's certificate of service purports that she served notice of the default judgment hearing on April 6, she waited until April 10 to send notice to Defendant.

Page 3

On 17 April 2017, before the default judgment hearing, Defendant filed a motion to set aside default and for sanctions against Plaintiff, based on Plaintiff's



Case 4:19-cv-00047-H   Document 1-3   Filed 04/04/19   Page 135 of 140

misrepresentations to the court. After a hearing on the matter, the trial court set aside the entry of default and entered monetary sanctions against Plaintiff.

Subsequently, the trial court heard arguments on Defendant's motion to dismiss, in which Defendant argued primarily that Plaintiff had failed to properly plead a medical malpractice claim in accordance with Rule 9(j) of the North Carolina Rules of Civil Procedure. Prior to the hearing and on the same day, Plaintiff filed an amended complaint. The trial court found that, despite Plaintiff's amendments, her complaint still alleged claims for medical malpractice and failed to satisfy Rule 9(j), and therefore granted Defendant's motion to dismiss.

Plaintiff filed a motion for relief from the trial court's order dismissing her complaint under Rules 59 and 60. After a hearing on the matter, the trial court denied the motion.

Plaintiff timely appealed.

II. Analysis

Plaintiff brings, essentially, two arguments on appeal. First, she contends that the trial court erred in setting aside entry of default against Defendant. Second, she argues that the trial court should not have dismissed her amended complaint,

Page 4

contending that it established a cause of action for ordinary negligence, not medical malpractice. We address each argument in turn.

A. Entry of Default

Plaintiff first argues that it was error for the trial court to set aside entry of default against Defendant and that the court should have entered a default judgment. We note that prior to the start of the hearing on Plaintiff's

motion for default judgment and Defendant's motion to set aside default, Plaintiff filed an amended complaint, though without leave of court.

When a party fails to respond to an action against it in a timely manner, the clerk may enter default against it. N.C. R. Civ. P. 55(a). Then, if that party continues to fail to respond and damages are certainly computable, a final default judgment may be entered against it on the moving party's claims. N.C. R. Civ. P. 55(b).

According to Rule 12(a)(1) of the North Carolina Rules of Civil Procedure, a party normally has thirty (30) days from the service of a complaint against it to timely *serve* it's answer. N.C. R. Civ. P. 12(a)(1). However, service of a Rule 12 motion, such as a 12(b)(6) motion to dismiss, tolls the clock and extends the time allowed for the *service* of a responsive pleading until twenty (20) days after the trial court resolves the Rule 12 motion. N.C. R. Civ. P. 12(a)(1)(a).

In her motion for entry of default, Plaintiff represented that Defendant had not filed an answer or a responsive pleading of any kind in this case. Pursuant to a

Page 5

time extension, Defendant had until 7 March 2017 to respond to Plaintiff's original complaint. Though Defendant's Rule 12(b)(6) motion was not filed with the court until 9 March 2017, the record shows that Defendant served the motion on 3 March 2017, four days before its time to respond expired. And we note that "Rule 12(a)(1) require[d] only that [D]efendant *[s]erve* his [response] within thirty days." *Quaker Furniture House, Inc. v. Ball*, 31 N.C. App. 140, 141, 228 S.E.2d 475, 476 (1976) (emphasis added).

Defendant's motion to dismiss tolled the responsive period for service of its Answer until twenty (20) days from the resolution of



the motion to dismiss. Plaintiff filed her motion for entry of default on 29 March 2017, before a hearing on Defendant's motion to dismiss had been scheduled. The evidence supports the trial court's conclusion that Defendant made timely service of its motion to dismiss, which then tolled Defendant's time to respond until after the motion had been properly reviewed. Therefore, we conclude that the trial court did not err in setting aside entry of default and denying entry of default judgment.[1]

### Page 6

Likewise, we conclude that the trial court did not err in ordering sanctions against Plaintiff. There was evidence before the trial court which showed that Plaintiff deliberately filed a motion for entry of default that was clearly without merit. The evidence showed that she then waited until April 10 to serve Defendant with notice of the April 17 hearing on the matter, though she submitted that service had occurred on April 6. The evidence supports the trial court's findings that there was "no good faith basis upon which to seek an entry of default" and Plaintiff made "multiple misrepresentations" to the court in her filings. We conclude that the trial court did not exceed its authority in deciding to sanction Plaintiff.

### B. Pleadings Under Rule 9(j)

Plaintiff next challenges the trial court's grant of Defendant's Rule 12(b)(6) motion to dismiss her wrongful death claim. Specifically, Plaintiff argues that the trial court erred in holding that her claim qualified as a suit for medical malpractice, rather than ordinary negligence. "On appeal from an order dismissing a claim pursuant to Rule 12(b)(6), we conduct de novo review." *Silver v. Halifax Cty. Bd. of Commissioners*, ___ N.C. ___, ___, 821 S.E.2d 755, 759 (2018).

A claim is for medical malpractice if it seeks "damages for personal injury or death arising out of the furnishing or failure to furnish *professional services* in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2013) (emphasis added). The term "professional services" in

### Page 7

this context refers to an act or service "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Smith v. Keator*, 21 N.C. App. 102, 105-06, 203 S.E.2d 411, 415, *aff'd*, 285 N.C. 530, 206 S.E.2d 203 (1974). Claims alleging injury as a result of clinical judgment and skill sound in medical malpractice, while claims alleging injury in a medical setting but not involving medical assessment are for ordinary negligence. *Gause v. New Hanover Reg'l Med. Ctr.*, ___ N.C. App. ___, ___, 795 S.E.2d 411, 415 (2016).

Plaintiff contends that her claim is one for simple negligence, because Defendant's failure to adequately monitor and supervise Ms. Foote to ensure that she did not consume body wash did not involve the use of special knowledge or training. Rather, Plaintiff contends, Defendant's failure to supervise Ms. Foote was an act that did not require any particular clinical judgment or intellectual skill, did not qualify as professional services, and amounted to ordinary negligence. *See Taylor v. Vencor, Inc.*, 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (2000) (holding plaintiff's claim was for ordinary negligence where nursing home failed to supervise patient smoking cigarettes). Plaintiff asserts that the facts here are similar to those in *Taylor*, as Ms. Foote's injuries resulted from Defendant's failure to supervise Ms. Foote while knowing that she may injure herself.

### Page 8

However, in construing whether a party's claim requires a Rule 9(j) certification, we look



to the language of the complaint. *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002) ("[T]he pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim."); *see also Davis v. Rigsby*, 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964) ("A party is bound by his pleadings and . . . the allegations contained in all pleadings ordinarily are conclusive as against the pleader.").

Plaintiff's Amended Complaint alleges that Defendant, among other things:

> 23. (a). . . . failed to possess that degree of knowledge, training and experience ordinarily possessed by others practicing the specialty of geriatric medicine in [similar communities];
> (b) failed to apply that degree of knowledge, training and experience to the care of [Ms. Foote];
>
> (e) failed to properly and timely interpret the information related to them . . .;
> (f) failed to timely discover and disclose the cause of Ms. Foote's nausea, vomiting, and diarrhea[;]
>
> (h) failed to timely and appropriately interpret the results of [the] diagnostic studies performed;
>
> (j) failed to arrive at a timely and proper diagnosis consistent with [Ms. Foote's] signs, symptoms and clinical findings;
>
> (r) failed to timely and appropriately determine the need for surgery;
>
> (t) failed to timely and

appropriately diagnose and treat rectal bleeding;

Page 9

> (v) failed to use their best judgment in the care of treatment of [Ms. Foote];
> (w) failed to provide care in accordance with the standard of practice among members of the same health care profession with similar training and experience situated in same or similar communities in 2014 . . . .
> . . . .

Even a cursory reading of these allegations shows that each of these contentions contemplates the use of specific knowledge or skill in assessing and subsequently addressing Ms. Foote's condition. Plaintiff alleges much more than mere failure to supervise Ms. Foote. Specifically, Plaintiff's amended complaint alleges a failure to interpret symptoms, discover medical causes, and then diagnose and treat Ms. Foote—far more than a simple failure to supervise. Diagnosis and medical treatment require the application of intellectual skill, knowledge, and training, and clearly indicate a claim for medical malpractice. The trial court did not err in dismissing Plaintiff's complaint for lack of a Rule 9(j) certification.

Plaintiff also assigns error to the trial court's refusal to dismiss her complaint without prejudice. We review the trial court's decision to dismiss with or without prejudice only for an abuse of discretion, *Whedon v. Whedon*, 313 N.C. 200, 213, 328 S.E.2d 437, 445 (1985), and we find no abuse of discretion here. Plaintiff had the time and opportunity to either properly amend her complaint to conform to Rule 9(j)'s requirements, or to seek a voluntary dismissal pursuant to Rule 41(a)(1). Instead, Plaintiff chose to make

-4-

inappropriate attempts to enter default against Defendant,

Page 10

and amend her complaint to avoid the need for a Rule 9(j) certification. We cannot say that the court was without reason in dismissing her complaint with prejudice.

C. Motion for Relief from Order

Lastly, Plaintiff contends that the trial court committed error in denying her motion for relief from order under Rules 59 and 60. We review these motions for an abuse of discretion. *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006).

To succeed under Rules 59 and 60, Plaintiff must at least show extraordinary circumstances for which justice demands that relief be granted. *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987). In support of her motion, Plaintiff advanced the same arguments presented earlier in this case: that her complaint was rightfully one for ordinary negligence, not medical malpractice. Because we hold that Plaintiff's complaint alleges a claim for medical malpractice, we conclude that the trial court did not abuse its discretion in denying Plaintiff's motion for relief on the same grounds.

At the hearing on her Rule 59 and 60 motions for relief from order, Plaintiff also requested leave to amend her complaint again.[2] Plaintiff stated at the hearing that an expert had been retained and had already reviewed the case prior to the

Page 11

submission of her original complaint. However, during the hearing on entry of default, Plaintiff admitted that an expert had not yet been retained to review her case for 9(j) certification. If an expert had been retained from the beginning, Plaintiff had every

opportunity to properly certify her case in her first amendment. In light of the record, we conclude that the court did not abuse its discretion in denying Plaintiff a second opportunity to amend. *Thigpen v. Ngo*, 355 N.C. 198, 204, 558 S.E.2d 162, 166 (2002) ("[P]ermitting amendment of a complaint to add the expert certification where the expert review occurred after the suit was filed would conflict directly with the clear intent of the legislature."). Rule 9(j) requires a complaint to be dismissed, not "dismissed or amended." *Brown v. Kindred Nursing Cntrs. E., L.L.C.*, 364 N.C. 76, 82, 692 S.E.2d 87, 91 (2010).

III. Conclusion

We hold that the trial court did not err in setting aside entry of default against Defendant and entering sanctions against Plaintiff. Further, we conclude that the trial court properly dismissed Plaintiff's claim for wrongful death for failure to include a Rule 9(j) certification. Her complaint, even after amendment, alleged a failure to employ the intellectual skill, knowledge, and training expected of a medical professional beyond that considered ordinary negligence.

AFFIRMED.

Judges ZACHARY and ARROWOOD concur.

Page 12

Report per Rule 30(e).

--------

Footnotes:

[1] We recognize Plaintiff's contention that Defendant's motion to set aside entry of default was not timely filed under Rule 5(a1) of our Rules of Civil Procedure. However, Rule 5(a1) governs service of briefs and memorandums supporting motions, not the motions themselves. N.C. R. Civ. P. 5(a1). Even if it applied, Rule (5)(a1) allows the court to



Case 4:19-cv-00047-H    Document 1-3    Filed 04/04/19    Page 139 of 140

take "action as the ends of justice require." N.C. R. Civ. P. 5(a)(1). Here, where entry of default was clearly incorrect, we are inclined to say that hearing Defendant's motion properly served the interest of justice.

2. Typically, "once the trial court enters its dismissal under Rule 12(b)(6), plaintiff's right to amend under Rule 15(a) is terminated." *Johnson v. Bollinger*, 86 N.C. App. 1, 7, 356 S.E.2d 378, 382 (1987). But, pursuant to a Rule 59 or 60 motion for relief, a plaintiff may request to reopen the judgment and amend her complaint. *Id.*

--------